**UNITED STATES of America**

v.

**Larry Craig RICHARDSON.**

**Crim. A. No. 74–78.**

United States District Court,
W. D. Pennsylvania.

Sept. 3, 1974.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Samuel A. Vitaro, Pittsburgh, Pa., for defendant.

## MEMORANDUM and ORDER

McCUNE, District Judge.

The defendant has been indicted for failure to register with the Selective Service System, a violation of 50 U.S.C. App. § 462(a). He has filed a motion to dismiss the indictment on the ground that the prosecution is barred by the statute of limitations.

The defendant became 18 years of age on September 7, 1968. Under § 13 of the Military Selective Service Act, 50 U.S.C. App. §. 463, and the applicable Presidential Proclamation the defendant was required to register with the Selective Service System within five days of his birthday. He did not do so.

The defendant argues that his crime of failure to register was complete six days after his 18th birthday, Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). The 5-year statute of limitations, 18 U.S.C. § 3282, began to run at that point, he argues, and an indictment, in order to be timely, should have been returned by September 13, 1973. Since the indictment was returned on March 7, 1974, his argument concludes, it is barred by the statute of limitations.

The government responds that this indictment is timely because it was returned within the time of the amended statute of limitations on prosecutions for failure to register enacted by the Congress on September 28, 1971, 50 U.S.C. App. § 462(d).[1] The new statute of limitations was passed, obviously, before the old 5-year statute had run on the defendant's violation. The government contends that the new statute of limitations applies to the defendant even though his failure to register occurred before it was enacted. The government relies solely on United States of America

---

1. "(d) No person shall be prosecuted, tried, or punished for evading, neglecting, or refusing to perform the duty of registering imposed by section 3 of this title [section 453 of this Appendix] unless the indictment is found within five years next after the last day before such person attains the age of twenty-six, or within five years next after the last day before such person does perform his duty to register, whichever shall first occur. As amended Sept. 28, 1971, Pub.L. 92–129, Title I, § 101(a)(31), 85 Stat. 352."

v. Hackley, No. 4–73–Crim. 243 (D. Minn. 4th Div., filed March 14, 1974).

Section 462(d) was enacted in response to the decision of the Supreme Court in Toussie v. United States, *supra.* There the defendant did not register for the draft within five days of his 18th birthday, June 28, 1959. He was indicted in May, 1967, for failure to register and subsequently was convicted. The District Court held that the Universal Military Training and Service Act[2] imposes a continuing duty to register which lasts until age 26 and the prosecution, therefore, was not barred by the 5-year statute of limitation since a violator could be prosecuted for 5 years after his 26th birthday. The United States Court of Appeals for the Second Circuit affirmed.

In reversing the conviction, the Supreme Court held that Toussie "was allowed a five-day period in which to fulfill the duty (to register), but when he did not do so he then and there committed the crime of failing to register." 397 U.S., at 119, 90 S.Ct., at 862. The Court, rejecting the theory advanced by the government and supported by a long string of case law, ruled that failure to register is not a continuing offense: "(T)here is nothing inherent in the nature of failing to register," the Court said, "that makes it a continuing offense." 397 U.S., at 122, 90 S.Ct., at 864. The Court concluded that since the crime was complete "when dawn breaks on the unregistered male, six days after his 18th birthday," and[3] since the failure to register was not a continuing violation, then the statute of limitations begins to run at the end of the five-day registration period. In short, the Court held that an unregistered male could not be prosecuted for failure to register unless he was indicted within five days after his 23rd birthday.

In the aftermath of *Toussie* the Congress, if it wished to avoid the consequences of the decision, could have done one of two things: made failure to register a continuing offense, or extended the statute of limitations.[4] Congress chose the later alternative and amended the Act to permit prosecutions for failure to register for 5 years after a violator's 26th birthday.

The legislative history clearly spells out the Congressional purpose in enacting the new statute of limitations:

"Extension of Statute of Limitations on Prosecution For Non-Registration to Five Years after a Registrant's Twenty-Sixth Birthday

The House version included a provision recommended by the Administration by adding a new subsection 5(d) which will overcome the result of Toussie v. United States, [397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156] (1970). That opinion interpreted the Act to limit the time for prosecuting men who fail to register to five years and five days after a man's 18th birthday. The Committee language will allow the prosecution of a nonregistrant up to five years after his 26th birthday. It does not change the statute of limitations for any other violation of Selective Service law. This change is deemed appropriate not only as a deterrent to nonregistration but also as a reflection of equity to those men who comply with the Act's registration requirements and remain lia-

---

2. In 1967 the Act was amended by the Military Selective Service Act of 1967. The registration provisions, 50 U.S.C. App. § 453, were not affected by the amendments.

3. 397 U.S., at 133, 90 S.Ct., at 870 (White, J., dissenting).

4. "We do feel that the threat of criminal punishment and the five-year statute of limita-

tions is a sufficient incentive to encourage compliance with the registration requirements. If Congress had felt otherwise it could easily have provided for a longer period of limitations. It has not yet done so." Toussie v. United States, 397 U.S., at 123, 90 S.Ct., at 864.

ble at least to age 26." 1971 U.S. Code Cong. and Admin.News, p. 1455–6.

The issue before the Court is whether the new statute of limitations applies to offenses committed before its enactment.[5]

■ *Hackley, supra,* is apparently the only case which has decided the question. The facts in *Hackley* are almost identical to the facts here. There, the defendant was required to register by July 17, 1967, and he did not do so. He was not indicted, however, until December 12, 1973. The court held that although the indictment was returned beyond the expiration of the 5-year statute it was within the period specified in the amended statute and therefore timely. The court relied on a case decided by Judge Learned Hand, Falter v. United States, 23 F.2d 420 (2nd Cir. 1928), and its progeny, for the indisputable proposition that Congress may extend a statute of limitations period for a crime already committed, provided the crime is not already barred by the prior statute.[6]

We, of course, do not dispute either the logic or the holding in *Falter*; but we do not think it resolves the problem at hand.[7] The problem here is not whether Congress may extend that statute as to offenses already committed, but whether it has extended it. Should an extended statute of limitations be interpreted to apply to offenses already committed if the Congress does not specifically say that it should?

The seminal case in this area, and a case relied on by Judge Hand in *Falter*, is Commonwealth v. Duffy, 96 Pa. 506 (1880). There the Pennsylvania Supreme Court interpreted the language of the Pennsylvania statute of limitations as evincing an intent by the state legislature to apply the extended statute retroactively as well as prospectively. The Court then held that:

"... an act of limitation is an act of grace purely on the part of the legislature. Especially is this the case in the matter of criminal prosecutions. The state makes no contract with criminals, at the time of the passage of an act of limitation, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only. They are

---

5. If it does apply the defendant concedes he falls within its provisions.

6. "Certainly it is one thing to revive a prosecution already dead, and another to give it a new lease on life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." Falter v. United States, 23 F.2d, at 425–26.

7. In *Falter* Judge Hand was interpreting a statute which expressly provided it was to be applied retroactively. The statute read:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 1044 of the Revised Statutes of the United States be amended so as to read as follows: 'Sec. 1044. No person shall be prosecuted, tried, or punished for any offense, not capital, except as provided in section 1046, unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed: Provided, however, That in offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, and now indictable under any existing statutes, the period of limitation shall be six years. *This Act shall apply to acts, offenses, or transactions where the existing statute of limitations has not yet fully run, but this proviso shall not apply to acts, offenses, or transactions which are already barred by the provisions of existing laws.'* Sec. 2. That this Act shall be in force and effect from and after the date of its passage." C. 124, § 1, 42 Stat. 220 (emphasis added).

entirely subject to the mere will of the legislative power and may be changed or repealed altogether, as that power may see fit to declare. Such being the character of this kind of legislation, we hold that in any case where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against ex post facto laws. A law enlarging or repealing a statutory bar against criminal prosecutions may, therefore, apply as well to past as to future cases *if its terms include both classes* . . . " 96 Pa., at 514 (emphasis added.)

In enacting § 462(d) Congress did not explicitly state that it intended the statute to apply retroactively as it assuredly could have done, and has done.[8]

█ In the absence of a clear statement from Congress that it intended retroactive application of the extended statute we do not think we should extend it by judicial order. To do so would presume that Congress was in error—that it passed a statute which did not reflect its intent. We think the better course is to presume that Congress was not mistaken; and that the statute contains no reference to retroactive application because Congress did not intend it to be so applied.[9]

█ This construction of the statute is consistent with the established principle that criminal limitation statutes are "to be liberally interpreted in favor of repose," United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917 (1932). (Quoted in Toussie v. United States, 397 U.S., at 115, 90 S.Ct. at 860). It is also consistent with the declared policy of Congress "that the statute of limitations should not be extended '(e)xcept as otherwise *expressly* provided by law.' 18 U.S.C. § 3282." Toussie v. United States, 397 U.S., at 115, 90 S.Ct. at 860. (Emphasis added). Furthermore, "(a) law is presumed to operate prospectively unless there is a clear expression to the contrary," Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938).

██ We hold that 50 U.S.C. App. § 462(d) does not apply retroactively to offenses committed before its enactment; that the general 5-year statute of limitations, 18 U.S.C. § 3282, applies to this case; that the indictment in issue was brought more than 5 years after the commission of the crime alleged; and that the statute of limitations, therefore, bars the prosecution and the indictment must be dismissed.

An order will be entered.

8. In 1954, Congress amended the general criminal statute of limitations to extend the period from 3 to 5 years. Section 12(b) of the Act September 1, 1954, § 1, 68 Stat. 1145, provided that:
"The amendment made by subsection (a) (amending this section) shall be effective with respect to offenses (1) committed on or after September 1, 1954, or (2) committed prior to such date, if on such date prosecution therefore is not barred by provisions of law in effect prior to such date."

9. It may be that Congress was mistaken in failing to extend the statute of limitations retroactively. Nevertheless, as Justice Frankfurter admonished, "An ommission at the time of enactment, whether careless or calculated, cannot be judicially supplied, however much later wisdom may recommend the inclusion," Frankfurter, Some Reflections on the Reading of Statutes, 47 Col.L. R. 527 (1947). "We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We must take this statute as we find it." Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 420, 77 L.Ed. 1004 (1933) (Cardozo, J.).