## WILLIAM MILTON MURPHY, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 23662

March 30, 1994

871 P.2d 916

*Evan Beavers*, Minden, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Victor Schulze*, District Attorney, Esmeralda County, for Respondent.

## OPINION

*Per Curiam:*

On November 9, 1988, appellant William Milton Murphy (Murphy) was driving his blue pickup truck (pickup) on grazing land owned by the federal government in Esmeralda County, Nevada. Employees of a nearby ranch became suspicious of Murphy and called the sheriff. The sheriff determined that Murphy was cattle rustling; thus, Murphy was arrested and charged with grand larceny, conspiracy to commit grand larceny, and three counts of possession of a controlled substance.

Two and one-half years later, and immediately preceding trial, the district attorney dismissed the grand larceny and conspiracy charges because he did not believe those charges could be proved beyond a reasonable doubt. Murphy was acquitted on the remaining drug possession charges. Five months later, the district attorney filed a criminal complaint against Murphy for possession of stolen cattle. A preliminary hearing was held at which the justice of the peace discharged Murphy because the State's case failed to establish probable cause to bind over Murphy for trial. Undaunted, the district attorney filed an information upon affidavit, charging Murphy with the same offense. Murphy went to trial and was convicted of possession of stolen cattle. He was sentenced to five years in the Nevada State Prison, but placed on probation, fined $9,400.00, and ordered to perform 600 hours of community service.

For reasons stated hereafter, the judgment of conviction is reversed.

### FACTS

Lida Livestock Ranch (Lida) leases the grazing rights to approximately 900,000 acres of federal government land (grazing land) managed by the Bureau of Land Management (BLM). This grazing land is located in western Nevada and eastern California. Stephen Sheppeard (Sheppeard) is the cowhand boss for Lida.

On November 9, 1988, Sheppeard and another cowhand were inspecting Lida's cattle near Tule Canyon when they discovered a pickup attached to a gooseneck trailer,[1] in a remote area on the grazing land. The gooseneck trailer was backed up to Roosevelt Corral with its tailgate down.[2] Sheppeard drove towards Roosevelt Corral to get a closer look, and noticed two men

---

[1]Gooseneck trailers are used to haul cattle and horses.

[2]Roosevelt Corral is used as a watering place for Lida's cattle.

crouching inside the corral, in an apparent attempt to evade discovery. Sheppeard drove to Lida Junction where he reported his observations, over the telephone, to Glenn Penson, Sheriff of Esmeralda County (the Sheriff).

Forty-five minutes later, the Sheriff met Sheppeard at Lida Ranch. Together, they set off for Roosevelt Corral. On the way there, the Sheriff noticed tire tracks on the grazing land. Therefore, he followed those tracks past Tule Corral to an old talc mine. Once there, the Sheriff spotted the pickup and gooseneck trailer travelling at a slow rate of speed. As the Sheriff's car got closer to the pickup, the driver swung his side of his vehicle to the left, in a semi-circle and back towards the approaching Sheriff's car. At this point the pickup was approximately one mile away from the Sheriff's car. After the pickup stopped, six calves appeared to come out of the escape door on the right side of the gooseneck trailer.[3] The Sheriff eventually caught the pickup; inside were the driver, appellant Murphy, and his companion, Lonny Johnson. Murphy was taken into custody and charged with grand larceny, conspiracy to commit grant larceny, and three counts of felony possession of a controlled substance.[4]

On January 31, 1991, shortly before trial was to commence, the new district attorney of Esmeralda County filed a motion to dismiss the grand larceny and conspiracy charges against Murphy.[5] Murphy stood trial on the remaining drug possession charges and was found not guilty.

On July 22, 1991, following the dismissal of the grand larceny and conspiracy charges, and following the acquittal on the drug possession charges, the Sheriff filed a criminal complaint against Murphy alleging possession of stolen cattle, a felony under NRS 205.275. On December 9, 1991, a preliminary hearing was held in the Justice Court of Esmeralda Township before Judge Solan Terrell. Judge Terrell concluded that the evidence against Murphy was inadequate to bind over Murphy for trial. Accordingly, the possession of stolen cattle charge against Murphy was discharged. In response, the district attorney filed a ''Motion for

---

[3]Sheppeard testified at Murphy's trial that he never saw the calves inside the trailer, but that it looked like the calves came out of the escape door on the trailer. Additionally, Sheppeard testified that he never saw Murphy steal cattle, nor did he see Murphy in possession of any cattle.

[4]It was alleged that inside Murphy's pickup truck the Sheriff discovered small quantities of cocaine, methamphetamine, and marijuana.

[5]Victor Schulze assumed the office of District Attorney of Esmeralda County on January 7, 1991. In his motion for dismissal, Mr. Schulze states: ''[U]pon review of the instant matter, your Affiant [Schulze] is of the opinion that the evidence will not support the charges of grand larceny and conspiracy to commit grand larceny to a degree beyond a reasonable doubt.''

Leave to File an Information by Affidavit'' with the district court. The district court granted that motion and Murphy was tried for possession of stolen cattle. Ultimately, Murphy was convicted and sentenced to five years in the Nevada State Prison, but was placed on probation, fined $9,400.00 and ordered to perform 600 hours of community service.

## LEGAL DISCUSSION

*Whether the trial court erred by permitting the State to file an information by affidavit following a determination by the justice court that probable cause did not exist to bring the case to trial.*

NRS 173.035(2), in pertinent part reads:

> If, however, upon the preliminary examination the accused has been discharged . . . the district attorney may, upon affidavit of any person who has knowledge of the commission of an offense, and who is a competent witness to testify in the case, setting forth the offense and the name of the person or persons charged with the commission thereof, upon being furnished with the names of the witnesses for the prosecution, by leave of the court first had, file an information . . . .

This statute contemplates a safeguard against egregious error by a magistrate in determining probable cause. It is not, however, a device to be used by a prosecutor to satisfy deficiencies in evidence at the preliminary hearing through an affidavit. Cranford v. Smart, 92 Nev. 89, 545 P.2d 1162 (1976).

In *Cranford,* appellant Cranford was charged with being an ex-felon in possession of a firearm. After preliminary examination, Cranford was ordered to stand trial. On appeal, this court reversed the denial of habeas corpus relief because the record contained neither probative nor demonstrative evidence that Cranford was an ex-felon. Thereafter, the prosecutor, pursuant to NRS 173.035(2), obtained leave in the district court to file an information upon affidavit, charging Cranford with the same offense. On the second appeal, this court stated:

> if the prosecuting attorney had evidence that Cranford was an ex-felon, he was not precluded from instituting new charges in the justice's court, or from seeking an indictment before a grand jury. However, he could not proceed under NRS 173.035(2). That statute contemplates a safeguard against egregious error by a magistrate in determining probable cause, not a device to be used by a prosecutor to satisfy deficiencies in evidence at a preliminary examination, through affidavit.

*Cranford,* 92 Nev. at 90-91, 545 P.2d at 1163 (citations omitted) (footnote omitted).

The State has failed to make a showing that Judge Terrell's refusal to bind over Murphy for trial was an egregious error. Moreover, the record supports Judge Terrell's conclusion that the State had utterly failed to produce evidence to show probable cause existed that Murphy had possessed stolen cattle.[6] Pursuant to our holding in *Cranford,* the proper way for the State to bring the charges against Murphy would have been by filing a second complaint or by indictment. Instead, the State filed an information upon affidavit. That device is not to be used by a prosecutor to satisfy deficiencies in evidence at the preliminary hearing. Consequently, we conclude that the district court erred when it granted the State's motion for leave to file an information upon affidavit.

*Whether appellant's prosecution was initiated within the applicable statute of limitations period.*

Murphy argues that his prosecution for possession of stolen goods was barred by the applicable statute of limitations period.[7] Murphy contends that the alleged crime took place on November 9, 1988, and that the State did not file an information upon affidavit until December 31, 1991, more than three years after the commission of the alleged offense. Pursuant to NRS 171.085(2), Murphy argues that the filing of the information was barred by the statute of limitations period—thus, the district court lacked subject matter jurisdiction.

---

[6]At the preliminary hearing, the State could not produce anyone who saw Murphy in possession of stolen cattle. Sheriff Glenn Penson, the State's key witness, gave the following testimony:

> Q. Did [Murphy] ever tell you that he intended to steal somebody's cattle?
> A. No.
> Q. And you actually never saw Murphy in possession of anybody else's cattle, did you?
> A. No.

In addition, the Sheriff testified that he never saw cattle inside Murphy's trailer.

[7]NRS 171.085 sets forth the following statute of limitations:

> 1. Theft, robbery, burglary, forgery, arson or sexual assault must be found, or an information or complaint filed, within 4 years after the commission of the offense.
> 2. Any other felony than murder, theft, robbery, burglary, forgery, arson or sexual assault must be found, or an information or complaint filed, within 3 years after the commission of the offense.

Conversely, the State argues that possession of stolen property is statutorily defined as theft. NRS 205.0832.[8] That statute was not enacted until June 28, 1989, eight months after Murphy's arrest, and the events that led to the possession of stolen goods charge. If retroactively applied, that statute would have the effect of increasing the limitations period on possession of stolen property from three to four years. Indeed, the State asserts that the four-year limitations period for theft under NRS 171.085(1) applies.[9]

Before the statute of limitations for a criminal offense expires, a legislature may amend the statute and extend the limitations period without violating the ex post facto clause. *See* Falter v. United States, 23 F.2d 420 (2d Cir. 1928), *cert. denied,* 277 U.S. 590 (1928). *Contra* State v. Creekpaum, 732 P.2d 557 (Alaska Ct.App. 1987) (criminal statutes of limitations are not merely procedural, but operate as substantive right for ex post facto purposes). Generally, however, a statute must be construed to have only prospective effect, unless a contrary legislative intent is clearly indicated by express terms of the statute. Shepley v. Warden, 90 Nev. 93, 518 P.2d 619 (1974); *see also* Hasset v. Welch, 303 U.S. 303 (1938).

The Nevada Legislature did not express its intention that the definition of theft was to have retroactive application. 1989 Nev. Stat., ch. 567, § 13 at 1204. Moreover, criminal statutes of limitations are to be construed in favor of the accused. Toussie v. United States, 397 U.S. 112, 114-15 (1970). In light of these considerations, this court has held that an amendment to a criminal statute of limitations, silent on the question of its retroactive application, must be construed as prospective only, and cannot apply to an offense committed before its effective date. State v. Merolla, 100 Nev. 461, 686 P.2d 244 (1984); *see also* United States v. Richardson, 393 F.Supp. 83 (W.D.Pa. 1974), *aff'd* 512 F.2d 105 (3d Cir. 1975).

Prior to 1989, possession of stolen property was among the crimes designated as "any other felony" in NRS 171.085(2).

---

[8]In pertinent part, NRS 205.0832 provides that a person commits theft if without lawful authority, he knowingly:

    1. Controls any property of another person with the intent to deprive that person of the property.

    . . . .

    5. Controls property of another person knowing or having reason to know that the property was stolen.

[9]Prior to the enactment of NRS 205.0832, possession of stolen goods was not classified as theft.

Thus, Murphy's prosecution for possessing stolen cattle was barred by the running of the three-year statute of limitations.[10]

## CONCLUSION

The lower court's judgment of conviction is reversed, and further prosecution is barred by the applicable statute of limitations.

---

[10]The filing of the information with the district attorney's affidavit did not relate back to the criminal complaint filed on July 22, 1991, because the information upon affidavit was based on a ground inconsistent with NRS 173.035(2).