NICHOLAS CIPRIANO, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 24027

April 27, 1995                         894 P.2d 347

[Rehearing pending]

*William G. Rogers,* Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Robert E. Estes,* District Attorney, Lyon County, for Respondent.

## OPINION

By the Court, YOUNG, J.:

### *FACTS*

Appellant Nicholas Cipriano ("Cipriano") met the alleged victim ("Jeri") on June 30, 1992, when he was helping her new

roommate move into Jeri's residence. The next day, Cipriano returned to Jeri's house at approximately 4:45 p.m. Jeri let Cipriano in, thinking he had returned to offer additional help with the moving process. The two talked for a few minutes, and Cipriano then made some sexually suggestive comments. Jeri rebuked these verbal advances, and Cipriano got up to leave.

Jeri later testified at a preliminary hearing that before leaving, Cipriano bent down toward her chair and tried to kiss her. Jeri refused. Undaunted, Cipriano tried to put his hands down her pants, touched her vaginal area and breasts outside her clothing, and grabbed her buttocks. Jeri struggled with Cipriano for the next few minutes, continually telling him to stop. Cipriano finally complied with these demands and left the house at approximately 5 p.m. He told Jeri not to tell anyone about the incident because he did not want any trouble.

Jeri's roommate returned a short time later and phoned the police. Officer Henry Wessel investigated the incident and eventually arrested Cipriano. Cipriano was charged with one count of attempted sexual assault and one count of open or gross lewdness.

On July 15, 1992, a preliminary hearing was held in justice court. Officer Wessel described an interview he had with Cipriano on the day of the alleged crime. Cipriano told the officer that he went over to Jeri's house to "get lucky." When Officer Wessel asked what that term meant, Cipriano replied that he "was going to try and f[---] her."

Jeri and Officer Wessel were the only witnesses to testify at the preliminary hearing. After considering their testimony, the justice of the peace bound Cipriano over for trial on the open or gross lewdness charge. However, he found that there was no probable cause supporting the attempted sexual assault allegation. Accordingly, that charge was dismissed. The justice of the peace reasoned that there was no evidence suggesting that Cipriano had the intent to commit sexual assault.

On July 27, 1992, the prosecutor who had represented the State at the preliminary hearing filed a motion in district court for leave to file an information by affidavit. The prosecutor described the testimony presented at the preliminary hearing and claimed that Cipriano's intent to commit sexual assault was evidenced by his comments made to Officer Wessel. The prosecutor then misquoted the preliminary hearing transcript, informing the court that Cipriano claimed he went over to Jeri's residence ". . . to f[---] her." Supporting the motion, the prosecutor attached his own affidavit wherein he described the alleged crime by recapping the events of the preliminary hearing. No other affidavits were attached to the motion.

The State claimed that the justice of the peace erred by failing to bind Cipriano over for trial on the attempted sexual assault charge. The State urged the district court to accept the information by affidavit in accordance with NRS 173.035(2).[1] The district court granted the State's motion, allowed the information, and Cipriano was ultimately tried for both attempted sexual assault and open or gross lewdness.

On October 20, 1992, Cipriano's trial was conducted in district court. Jeri and Officer Wessel essentially offered the same testimony as they had relayed at the preliminary hearing. Cipriano took the stand in his own defense and claimed that Jeri was the sexual aggressor and that he was only responding to suggestive comments she had made. On cross-examination, Cipriano claimed that he had never threatened a woman with violence for sex and that he had always been a "gentleman" around women.

In response to these comments, the State introduced the rebuttal testimony of Toni Cipriano ("Toni"). At the time of trial, Toni was the wife of Cipriano's stepson. Her testimony was admitted over the objections of defense counsel and after the district court conducted a hearing to examine the admissibility of the proffered evidence.

Toni testified that Cipriano had made sexual advances toward her on different occasions. She described the physical encounters as follows:

> [T]he more that I would try to tell him he should only think of me as a daughter and nothing else, the more aggressive he would get, grabbing my face and trying to kiss me, or if we were riding in the car, and he was behind me, he would try to slip his hand against the side of the door and touch me.

On one particular occasion, Toni claimed that Cipriano backed her up against a wall, tried to kiss her, and tried to grab her chest.

▮▮▮▮▮▮

The jury found Cipriano guilty of both open or gross lewdness

---

[1]NRS 173.035(2) allows the district attorney to correct egregious errors made by a magistrate in failing to bind an accused over for trial. The statute accomplishes this end with the following pertinent language:

> 2. If, however, upon the preliminary examination the accused has been discharged, or the affidavit or complaint upon which the examination has been held has not been delivered to the clerk of the proper court, the attorney general when acting pursuant to a specific statute or the district attorney may, upon affidavit of any person who has knowledge of the commission of an offense, and who is a competent witness to testify in the case, setting forth the offense and the name of the person or persons charged with the commission thereof, upon being furnished with the names of the witnesses for the prosecution, by leave of the court first had, file an information, and process must forthwith be issued thereon. . . .

and attempted sexual assault.[2] Cipriano appeals and makes the following two arguments: (1) the district court erred by allowing the prosecutor to file an information by affidavit and circumvent the proper pretrial charging process; and (2) the district court abused its discretion by allowing testimony regarding an alleged prior sexual incident involving Cipriano.

We agree with both contentions and accordingly reverse Cipriano's convictions.

## DISCUSSION

### NRS 173.035(2)

NRS 173.035(2) allows the prosecutor to correct egregious errors made by a magistrate in failing to bind an accused over for trial. Cranford v. Smart, 92 Nev. 89, 545 P.2d 1162 (1976). In the event of an egregious error, the prosecutor can file an information by affidavit in the district court. In accordance with the statutory language, the prosecutor must support the information with affidavits of competent trial witnesses who have knowledge of the alleged crimes.

Cipriano claims that the district court erred by allowing the State to file the information by affidavit. He asserts that the prosecutor improperly used NRS 173.035(2) by merely asserting the same evidence that lacked probable cause in justice court.

Cipriano's argument finds support in Murphy v. State, 110 Nev. 194, 871 P.2d 916 (1994), where we reasserted the principle that a prosecutor can only file an information upon affidavit under NRS 173.035(2) to correct *egregious* errors by the magistrate. In *Murphy,* appellant was charged with possession of stolen cattle. The justice of the peace refused to bind appellant over for trial because the charge was not supported by probable cause. Thereafter, the State sought leave to file an information by affidavit in accordance with NRS 173.035(2). The district court allowed the filing, and appellant was later tried and convicted of the posses-

---

[2]Open or gross lewdness is a common law gross misdemeanor. Although not specifically defined by Nevada statute, the jury in the instant case was instructed that the crime included any "act which is lustful, immoral, seductive and degrading, lecherous or tending to deprave morals and respect of sexual relations." *See* Ranson v. State, 99 Nev. 766, 670 P.2d 574 (1983) (open or gross lewdness is a common law crime not defined by any specific Nevada statute); *see also* NRS 201.210(1)(a) (without offering a definition, statute instructs that first offense of open or gross lewdness is a gross misdemeanor).

Attempted sexual assault is the attempted sexual penetration of another person against that person's will in violation of NRS 200.366 and NRS 193.330.

sion charge. This court reversed the conviction, holding that the State improperly circumvented the pretrial charging process. We reasoned that NRS 173.035(2) was a device to rectify "egregious error" and was not a mechanism for satisfying deficiencies in evidence:

> The State has failed to make a showing that Judge Terrell's refusal to bind over Murphy for trial was an egregious error. Moreover, the record supports Judge Terrell's conclusion that the State had utterly failed to produce evidence to show probable cause existed that Murphy had possessed stolen cattle. [Footnote omitted.] Pursuant to our holding in *Cranford,* the proper way for the State to bring the charges against Murphy would have been by filing a second complaint or by indictment. Instead, the State filed an information upon affidavit. That device is not to be used by a prosecutor to satisfy deficiencies in evidence at the preliminary hearing.

*Murphy,* 110 Nev. at 198, 871 P.2d at 918.

In addition to this substantive argument, Cipriano maintains that the State failed to comply with the specific filing requirements of NRS 173.035(2). The statute specifically requires that the information be supported by an affidavit of a "person who has knowledge of the commission of an offense, and who is a competent witness to testify in the case." NRS 173.035(2). Cipriano points out that the prosecutor did not comply with this language, but simply attached his own affidavit to support the information.

We agree with both aspects of Cipriano's argument. NRS 173.035(2) clearly requires that the prosecutor attach an affidavit of a competent witness with knowledge of the commission of the offense and who is competent to testify at trial. Contrary to the State's assertions, this does not include the prosecutor, who only had knowledge of the alleged crimes because of his fortuitous presence at the preliminary hearing.

In addition, we cannot conclude that the justice of the peace made an egregious error in finding that the attempted sexual assault charge lacked probable cause. The State's evidence at the preliminary hearing was remarkably weak with respect to that charge. While we may have reached a different conclusion than the justice of the peace, the failure to bind over was not egregious error.

Finally, the underlying premise of *Murphy* instructs that the State cannot "forum shop" and utilize NRS 173.035(2) to cir-

cumvent pretrial charging procedures. Simply because the State is unhappy with a failure to bind over does not mean that it can reassert the same deficient evidence to obtain an information in district court. This is especially true where the prosecutor writes up his own affidavit and describes preliminary hearing evidence recently disposed of by the justice of the peace. In the absence of egregious error, *Murphy* informs the State that the proper avenue for obtaining a valid charge is for the prosecutor to file a new complaint in justice court or take the matter to the grand jury.

## Cipriano's alleged prior bad acts

Evidence of a defendant's other crimes, wrongs, or bad acts is not admissible to prove that the accused acted in a similar manner for purposes of the charge at issue. Beck v. State, 105 Nev. 910, 784 P.2d 983 (1989). The justification for this rule is that evidence of prior uncharged wrongs may improperly influence the jury and result in a conviction because the jury believes the accused is predisposed to crime or is a bad person. Crawford v. State, 107 Nev. 345, 348, 811 P.2d 67, 69 (1991). However, evidence of prior wrongs is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). It is within the trial court's sound discretion whether evidence of a prior bad act is admissible, and such decisions will not be disturbed on appeal unless manifestly wrong. *Crawford*, 107 Nev. at 348, 811 P.2d at 69. Moreover, evidence of other bad acts is only admissible where three requirements are met: (1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the evidence is more probative than prejudicial. Berner v. State, 104 Nev. 695, 697, 765 P.2d 1144, 1146 (1988).

The State introduced testimony that Cipriano made unwanted sexual advances toward his stepson's wife, Toni. At trial, the State argued that this evidence proved that Cipriano had the requisite intent necessary for attempted sexual assault. The district court agreed and admitted the testimony on that ground. On appeal, the State reiterates those contentions and additionally claims that Toni described events so similar to the charge at issue that her testimony was admissible under the "common scheme or plan exception" to the prior bad act rule. *See* Daly v. State, 99 Nev. 564, 665 P.2d 798 (1983).

In supporting these arguments, the State cites several inapposite Nevada opinions where evidence of a prior aberrant sexual incident was admitted under NRS 48.045(2). For example, the State cites Williams v. State, 95 Nev. 830, 603 P.2d 694 (1979).

There, Williams informed the victim that he was hiring a secretary and invited her to his office for an interview. He later asked the woman if they could conduct the meeting at her home. At this meeting, Williams made sexual advances toward the victim and threatened to use his karate expertise upon her if she did not comply with his sexual demands. At Williams' trial for sexual assault, the State introduced the testimony of another woman who claimed that Williams had attacked her in a similar fashion. This woman claimed that she had submitted to having intercourse with Williams after he had demonstrated his karate expertise during a feigned job interview.

This court upheld the admissibility of the prior bad act testimony. We reasoned that the "remarkable similarity of the *modus operandi*" of the two crimes made the testimony particularly relevant. As a result of the similarities, the district court properly determined that the probative value of the evidence outweighed its prejudicial impact on Williams' trial. *Id.* at 833, 603 P.2d at 697.

*Williams* aptly illustrates the type of case where prior sexual behavior has been admitted under NRS 48.045(2). Under these types of exceptions to the general rule of inadmissibility, there must be some similarity to the sexual conduct at issue in trial. *See, e.g., Daly,* 99 Nev. at 567, 665 P.2d at 801 (prior sexual act admissible where incident involved same persons, was temporally related, and "very similar" to crime charged); *see also* Willett v. State, 94 Nev. 620, 584 P.2d 684 (1978); Nester v. State of Nevada, 75 Nev. 41, 334 P.2d 524 (1959). Where the conduct is similar and describes a common scheme or plan, the prior conduct becomes particularly probative and outweighs any prejudicial impact upon the accused's trial. *See, e.g.,* Kenney v. State, 109 Nev. 220, 850 P.2d 311 (1993).

We conclude that unlike the foregoing examples, the testimony at issue was not similar to the crime charged. Toni testified that Cipriano held her by the shoulders, tried to kiss her, and made vulgar comments regarding his sexual desire for her. Toni also described how Cipriano would run his hand around the back seat of her car and attempt to touch her while she was riding in the front seat. Although Toni described reprehensible and tragic behavior, there is nothing in her testimony indicating any similarity between those events and the alleged attack underlying this appeal. The lack of any similarity between the prior act and the crime charged greatly undermines the relevance and admissibility of the evidence. *See Crawford,* 107 Nev. at 348-49, 811 P.2d at 69-70 (prior incidents of domestic violence and heterosexual

experiences were not relevant in proving that accused perfected a homosexual assault). Even though we recognize that this is a sensitive and difficult issue, we cannot condone the admission of prior bad act evidence in every case. Without some resemblance to the charged offense, evidence of the prior act becomes highly prejudicial and falls outside the exception and tumbles into the purview of the general rule—inadmissibility.

In light of the foregoing, we conclude that the district court abused its discretion in admitting the prior bad act testimony. The danger with this type of evidence is obvious. A jaundiced viewing is required to preclude verdicts that might otherwise rest upon false conceptions. Kimberly v. State, 104 Nev. 336, 337, 757 P.2d 1326, 1327 (1988). We also conclude that the error was not harmless and infected the entire trial court proceedings. The evidence against Cipriano was not overwhelming. *See* Weakland v. State, 96 Nev. 699, 701, 615 P.2d 252, 254 (1980) (establishing guidelines for harmless error determinations).

When we consider the cumulative effect of the improper introduction of prior bad act evidence and the district court's error in allowing the information by affidavit, it becomes clear that Cipriano's conviction for attempted sexual assault cannot stand. In addition, our conclusion that the evidentiary error infected the entire trial proceedings requires reversing Cipriano's accompanying conviction for open or gross lewdness. Accordingly, both of Cipriano's convictions are hereby reversed.

STEFFEN, C. J., and SPRINGER, J., concur.

SHEARING, J., with whom ROSE, J., joins, concurring in part and dissenting in part:

I agree that the conviction for attempted sexual assault must be reversed because of the inappropriate pretrial charging process. However, I do not agree that Cipriano's conviction for the crime of open and gross lewdness must be reversed. The majority holds that the testimony of the defendant's daughter-in-law should not have been admitted because the behavior she described was not similar to the crime charged, and was therefore, highly prejudicial.

It is difficult to see how the conduct described cannot be seen as similar to that described by the victim. In both cases, the victims alleged that Cipriano used force and intimidation to gain sexual favors. In both cases, the victims alleged that Cipriano placed them in a position where they could not retreat. In both cases, the victims alleged that Cipriano kissed or attempted to kiss them, touched them on the breasts and touched them in the crotch area despite their attempts to fight him off. Both victims also alleged that Cipriano persisted in this behavior in the face of

repeated requests to cease. The evidence supports a finding that Cipriano's bad acts were part of a common scheme or plan and showed his deliberate intent to commit open and gross lewdness under NRS 48.045(2).

Had the daughter-in-law's testimony been offered in the State's case-in-chief, I would probably have agreed that it was more prejudicial than probative. However, the testimony was offered after Cipriano's testimony that the victim in this case had attempted to seduce him, that he had never threatened violence to women, and that he had always been a gentleman around women. The State is prejudiced when the defendant may testify as to the accuser's bad character and his good character, and the State may not rebut that testimony. The rules of evidence must be construed to be fair to both parties.

Apart from concluding that the daughter-in-law's testimony was prejudicial and should not have been admitted, the majority also concludes that the evidence against Cipriano was not overwhelming and that therefore harmless error analysis is inappropriate. I disagree that the evidence was not overwhelming. In addition to the testimony of the victim, there was the testimony of the police officer who interviewed Cipriano, outlining and testifying to Cipriano's admission to all the acts alleged by the victim. The police officer testified as follows:

Q   And did he say why he had gone there?
A   Yes, he said he wanted to get lucky.
Q   And what did you reply?
A   I asked him, "What does 'get lucky' mean?"
Q   And did he answer you?
A   Yes, he did. He said, "you know, she might let me fuck her."
Q   Did you ask him any of the details?
A   Yes, I asked him what happened when he got there. He said when he arrived he tried some conversation, convincing conversation, and he said that he even tried to kiss her. He tried to get her clothes off of her, and he touched her breasts, her buttocks—or excuse me, her breasts and her vaginal area.
Q   Did he tell you that he tried to get in her pants?
A   Yes, he did, and he used that term exactly.
Q   Did he ask you to do anything or as your investigation—did he ask you to do anything about it?
A   At the termination of the interview he asked me not to tell his wife because she would be upset.

I believe that the jury would have found Cipriano guilty based upon his own admission and the victim's testimony. Given the

police officer's testimony, Cipriano's story that the victim in this case attempted to seduce him seems implausible in view of his admission concerning his purpose in going to the victim's house.

The defendant's conviction of the crime of open and gross lewdness should be affirmed.