DAVID ALLAN KEENEY, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 22663

March 24, 1993

850 P.2d 311

*Morgan D. Harris,* Public Defender and *Thomas J. Gibson,* Deputy Public Defender, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex A. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney and *John P. Lukens,* Deputy District Attorney, Clark County, for Respondent.

---

[1]The Honorable Miriam Shearing, Justice, did not participate in the decision of this appeal.

## OPINION

*Per Curiam:*

Appellant David Allan Keeney was convicted by a jury of six counts of sexual assault on a minor and one count of lewdness with a minor. Keeney raises four primary issues on appeal, the most important of which concerns the denial of a defense motion to subject the three minor victims to a psychological examination by an expert selected by the defense. We have concluded that Keeney's issues are without merit and that he was fairly tried and convicted. We therefore affirm.

## FACTS

In November, 1989, Keeney befriended a family consisting of the three minor victims, their younger sibling and their parents[1]

---

[1]The children's parents were their mother and stepfather.

as they were enroute to Las Vegas. Later in the same month, Keeney visited the family in Las Vegas and stayed with them in their motel room. While there, Keeney bestowed gifts upon the family, particularly the children.

After Keeney left on November 29, 1989, three of the four children, who were then 12, 10 and 9 years of age (hereafter victims #1, #2 and #3, respectively), disclosed to their parents that Keeney had sexually molested them. The Henderson Police Department was notified and the children were taken to the hospital. A physical examination confirmed that the children were recent victims of sexual abuse.

Keeney was located in El Paso, Texas, arrested and returned to Nevada. He was charged with seven counts of sexual assault and one count of lewdness with a minor.

Each of the victims testified at trial. Victim #2 described the painful assault he suffered on the first night of Keeney's stay. He recounted that while everyone was sleeping, Keeney, who shared a bed with him and his younger brother (fortunately, a non-victim), positioned himself next to Victim #2 and fondled him. Keeney then penetrated Victim #2 anally with his penis.

Victim #1 and Victim #3 testified that they were assaulted on the second night, while the children were alone with Keeney. Victim #1 testified that after her parents had gone, Keeney approached her and began touching her. He then led the twelve-year-old child into the bathroom, where he sexually assaulted her. Victim #1 further testified that at various times during the course of that night, Keeney inserted his penis and his finger into her vagina. Keeney also took Victim #3 into the bathroom where he sexually assaulted her. The nine-year-old victim testified that Keeney also touched her "private spot" with his tongue. Victim #3 said she observed Keeney attempt to do the same to Victim #1, who resisted him. Additionally, Victim #2 testified that he saw his sisters struggle with Keeney and go with Keeney into the bathroom. Finally, the children's testimony was corroborated by the medical evidence presented by the prosecution.

The jury returned a guilty verdict against Keeney on six[2] counts of sexual assault and one count of lewdness with a minor. Keeney was sentenced to six consecutive life terms with the possibility of parole, plus ten years on the lewdness conviction.

## DISCUSSION

Keeney contends that the district court committed prejudicial error by: (1) denying Keeney's motion for a physical and psychological examination of the victims; (2) admitting evidence of

---

[2]Count VI was dismissed by stipulation because the evidence only established two counts of sexual assault on Victim #3.

prior sexual misconduct; and (3) denying Keeney's motion to dismiss based upon the destruction of evidence by the Henderson Police Department. Keeney also complains of misconduct by the State in introducing evidence of prior sexual misconduct by Keeney that should have been excluded by the district court. Finally, Keeney insists that the evidence adduced at trial was insufficient to sustain his convictions for sexual assault.

### Physical and Psychological Examination

Prior to trial, Keeney filed a motion to have the child-victims examined psychologically and physically. The motion was motivated by defense counsel's belief that such a motion was required under Warner v. State, 102 Nev. 635, 729 P.2d 1359 (1986). The district court denied the motion, reasoning that *Warner* did not require defense counsel to move for physical and psychological examinations in all cases involving minor victims of sexual assault. The trial court also concluded that a physical examination occurring almost one and one-half years after the assaults would accomplish nothing, and that a psychological examination was unnecessary given the extent of the medical evidence. Defense counsel made no argument to the contrary at the time.

On appeal, Keeney advances a different reason for having sought a psychiatric expert. He now asserts that his primary basis for seeking the examinations concerned the method by which the testimony of the complaining witnesses was elicited by the Henderson Police Department and the Deputy District Attorney. Keeney contends that the denial of his motion to subject the victims to psychological and physical examinations deprived him of a fair trial since he was therefore unable to examine the victims for truthfulness and veracity and for any evidence of the alleged sexual assaults. Generally, on appeal defendant may not change the theory of his or her position from that asserted in the trial court. McCall v. State, 97 Nev. 514, 516, 634 P.2d 1210, 1212 (1981). Given the importance of the issue in this case and future cases, however, we elect to consider the issue.

Generally, a psychological examination of a sexual assault victim should be permitted if the defendant has presented a compelling reason therefor. Washington v. State, 96 Nev. 305, 307, 608 P.2d 1101, 1102 (1980). A compelling reason exists where the corroborating evidence is *de minimus* or nonexistent, and the defense has a reasonable basis for questioning the effect

of the victim's mental state on his or her veracity. *Washington,* 96 Nev. at 307, 608 P.2d at 1103; *see also Warner,* 102 Nev. at 637, 729 P.2d at 1360-61 (no evidence existed to corroborate the victim's allegations, leaving the outcome to depend primarily upon whether the jury believed the victim or the defendant), and Colley v. State, 98 Nev. 14, 17, 639 P.2d 530, 532 (1982) (motion for a psychiatric examination of victim correctly denied where her testimony was amply corroborated and her mental state not subject to serious attack).

Conversely, where an issue is reasonably raised regarding the effect of the victim's emotional state on his or her veracity, and there is an absence of corroborating evidence, it is error to deny the defense a psychiatric expert witness. Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992). In *Lickey,* the defendant was accused of sexually assaulting his granddaughter. No physical evidence of the assault was presented and the victim's accounts of the assaults were largely uncorroborated. This court was especially concerned about the child's description of an alleged vaginal digital assault by her grandfather while she was in the front seat of an automobile, sitting between the alleged perpetrator and her grandmother, who was driving the vehicle. The child, who was age seven at the time of the alleged assaults and age eight at the time of the trial, testified that her grandmother became very angry, pulled the car to the side of the road and began "slugging" her grandfather. Thereafter, stated the child, a police car arrived on the scene and a police officer engaged both of her grandparents in conversation in front of the grandparent's vehicle.

The grandmother (wife of Lickey, the alleged perpetrator) testified that no such event ever occurred, and that she did not scold or hit Lickey or talk to a police officer. The State did not produce the alleged percipient officer at trial. Moreover, the defense contended that the child's mother had a long-standing enmity toward her father, Lickey. We were persuaded that since the prosecution had raised the issue of the relationship between the victim's mental state and her veracity, Lickey should have been permitted to present expert testimony to the contrary. 108 Nev. at 194, 827 P.2d at 825. Thus, we concluded that:

> [U]nless competent evidence presents a compelling reason to protect the victim, it is error to deny a defendant the assistance of a defense psychologist or psychiatrist to examine the child-victim and testify at trial when the State is provided such assistance.

108 Nev. at 195, 827 P.2d at 826.

In so concluding, we were convinced that Lickey had satisfied

the mandates of *Washington,* and presented a compelling reason why a psychological examination of the victim should be permitted. Therefore, we held that the district court should have afforded Lickey an opportunity to have the child examined, absent a showing by the State that a compelling reason existed to protect the child-victim. *Id.*

Our conclusion in *Lickey* was not intended to place the burden on the State to demonstrate a compelling reason for denying a psychological examination in every sexual assault case. Moreover, *Lickey* was never intended to create a simple equation (absent a compelling need to protect the child) granting a defendant the automatic right to have an alleged child-victim of sexual abuse examined by a defense psychiatrist or psychologist whenever the State has employed such experts. Such a mechanical balancing of the trial ledger would frequently subject children who are victims of sexual abuse to unfair, unnecessary trauma, and would constitute a needless and time-consuming expense unless the criteria enunciated in *Washington* exist.

The above-quoted language from *Lickey* is clarified to mean that it would be error to preclude a defendant from having an alleged child-victim examined by an expert in psychiatry or psychology if: (1) the State has employed such an expert; (2) the victim is not shown by compelling reasons to be in need of protection; (3) evidence of the crime has little or no corroboration beyond the testimony of the victim; and (4) there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity. It remains within the sound discretion of the district court whether to grant a defendant's request for a psychological examination of the victim. The district court should base its decision on the facts and circumstances of each case and the law as reaffirmed herein.

In the instant case, the district court did not abuse its discretion in determining that defendant's request for psychiatric examination of the victims was not warranted. Neither of the reasons advanced by Keeney at trial and on appeal for requesting a psychiatric expert demonstrates that the victims' collective or individual veracity was adversely affected by their mental or emotional states.

Moreover, the victims' testimony was amply corroborated by the medical evidence. Dr. Charles W. Zumpft, the emergency room physician at University Medical Center, examined the victims within two days of the assaults. His examination of Victim #2 revealed a discoloration and tenderness in the boy's rectal area, consistent with penetration occurring within four days of

the examination. Dr. Zumpft's examination of Victim #1 revealed recent tears of the hymen and "discoloration which goes along with bruising in the area of the labia." The doctor opined that there had been penetration of the twelve-year-old girl's vaginal area within twenty-four hours of his examination that could have been caused by a finger or a penis.

Further, Dr. Diane S. Goebel, a pediatrician at Children's Clinic in Las Vegas, testified that she conducted a more extensive physical examination of the victims on December 15, 1989. Dr. Goebel testified that upon examining Victim #3, she found "a large hymenal tear of her hymenal ring" consistent with an attempted penetration by a finger or a penis. Dr. Goebel's examination of Victim #2 revealed rectal fissures consistent with penetration by a penis. Finally Dr. Goebel testified that her examination of Victim #1 revealed a "fully dilated vaginal opening with no hymen much at all left . . ." consistent with "full penetration of the vagina."

In addition to the physical evidence, the testimony of two mental health providers was presented. Marjorie Di Orio, a family therapist at Bridge Counseling, testified that her interviews with the children led her to conclude that they were victims of sexual assault. Dr. Paul G. Webb, then a psychiatric assistant, testified that he administered tests and interviewed the children and their parents to determine whether the children had been victimized. Based on his evaluation, he concluded that all three children were victims of recent sexual assaults. Additionally, unlike the court in *Lickey,* the district court here admonished the witnesses to refrain from testifying regarding the children's veracity.

In short, Keeney offered no compelling reason for requiring the children to undergo further mental or physical examinations. This case does not present a situation where the jury's decision depended solely on which side it believed. The medical evidence corroborated the children's allegations of sexual assault and there has been no suggestion that the children were suffering from some emotional or mental state that would affect their veracity. Therefore, we conclude that the district court acted within its discretion in denying Keeney's motion for psychiatric and physical examinations.

### *Admissibility of Prior Bad Acts*

At trial, the court admitted evidence regarding a prior incident of sexual misconduct with the child of a woman with whom Keeney resided in early 1989. The court ruled that the evidence

was admissible under Nevada law to show intent and that its probative value outweighed its prejudicial effect. Keeney contends that the prior sex offense was not shown by clear and convincing evidence and that in any event, the prejudicial impact of the evidence greatly outweighed its probative value.

Evidence of collateral offenses is inadmissible to show that a defendant has a propensity to commit crime. However, such evidence is admissible to show intent, motive, and common scheme or plan, among other things. NRS 48.045(2). In cases involving sexual assaults on minors, we have upheld the admissibility of prior bad acts for purposes other than to prove bad character, provided the following conditions are met:

> (1) the incident is relevant to the crime charged; (2) the incident is proven by clear and convincing evidence; and (3) the evidence is more probative than prejudicial.

Berner v. State, 104 Nev. 695, 697, 765 P.2d 1144, 1146 (1988); *see also* Petrocelli v. State, 101 Nev. 46, 51, 692 P.2d 503, 507 (1985).

In *Petrocelli*, we set forth the procedure to be followed by the district court before admitting evidence of collateral offenses. That procedure requires that the district court conduct a hearing outside the presence of the jury to hear the State's reasons why evidence of the collateral offense should be admitted. Thereafter, the State must apprise the trial judge of the quantum and quality of its evidence proving that the defendant committed the prior act. Lastly, the judge must weigh the proffered evidence's probative value against its prejudicial effect. 101 Nev. at 51-52, 692 P.2d at 507-508. The admissibility of evidence is left to the sound discretion of the trial court and will not be disturbed on appeal absent manifest error. *Petrocelli*, 101 Nev. at 52, 692 P.2d at 508.

In the present case, the evidence was properly admitted to prove intent since Keeney placed his intentions at issue by pleading not guilty. *See* McMichael v. State, 94 Nev. 184, 188, 577 P.2d 398, 400 (1978), *overruled on other grounds* in Meador v. State, 101 Nev. 765, 711 P.2d 852 (1985). Moreover, the similarities between the instant offenses and the prior incident evince a common scheme or plan. Both incidents involved befriending a parent or parents of the child-victim(s), sexually assaulting the child or children and trying to buy their silence with gifts. *See* Willett v. State, 94 Nev. 620, 621, 584 P.2d 684, 685 (1978) (sexual acts committed close in time under similar circumstances,

using same *modus operandi* showed common scheme or plan). Thus, the evidence was properly admitted under NRS 48.045. We must now determine whether the mandates of *Berner* and *Petrocelli* were satisfied in this case.

In cases involving sex offenses, evidence of sexual aberration is relevant and its probative value outweighs its prejudicial effect. *McMichael,* 94 Nev. at 189, 577 P.2d at 401; Findley v. State, 94 Nev. 212, 577 P.2d 867 (1978); and *Willett,* 94 Nev. at 622, 584 P.2d at 685. Sexual misconduct with minors qualifies as a sexual aberration. *McMichael,* 94 Nev. at 190, 577 P.2d at 402; *Findley,* 94 Nev. at 215, 577 P.2d at 868. In these types of cases, we have adopted "a more liberal judicial attitude . . . in admitting evidence of prior and subsequent proscribed sexual conduct." *McMichael,* 94 Nev. at 189, 577 P.2d at 401.

Here, Keeney's sexual offenses were committed against minor children. Thus, the evidence of Keeney's prior sexual misconduct was relevant, and its probative value outweighed its prejudicial effect. In addition, the following facts demonstrate that the prior assault was proved by clear and convincing evidence as required by *Berner.* Teresa S., Keeney's prior victim, testified that while Keeney lived with her mother, Keeney rubbed Teresa's vagina with his "whole hand" and touched her vagina with "his part." Teresa also testified that Keeney had given her gifts. Keeney was charged with first-degree sexual offense in North Carolina.

[Headnote 12]

Keeney contends that *Berner* was not satisfied because Teresa was unable to provide the exact dates of the assaults, other than to state it was "last year" or "a few years ago." This contention lacks merit. A child's inability to recall the exact date of the assault does not render her testimony inadmissible. Cunningham v. State, 100 Nev. 396, 683 P.2d 500, *cert. denied,* 469 U.S. 935 (1984). Child-victims are often unable to indicate with any precision when the offense was committed. 100 Nev. at 400, 683 P.2d at 502. Moreover, Keeney himself testified that he lived with the victim and her mother for approximately two and one-half weeks in February of 1989, and the charges were brought against him a month later.

The district court's ruling admitting the prior sexual assault evidence was justified under the laws of this State.

### Destruction of Evidence.

Keeney's next contention is that the district court erred in

denying his motion for dismissal based upon the erasure of tapes containing interviews with the victims. Although a written transcript of the tapes had been made, defense counsel argued that "it was quite possible" that the tapes contained exculpatory evidence which the State destroyed.

A conviction will not be reversed for destruction of evidence absent a showing by the accused of either bad faith or connivance by the government, or prejudice from its loss. Orfield v. State, 105 Nev. 107, 109, 771 P.2d 148, 149 (1989); *see also* Youngblood v. Arizona, 488 U.S. 51, 58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"). In addition, the appellant must show that the evidence was exculpatory and material, not merely suggestive of an alternative theory or helpful in preparing his defense. *Orfield,* 105 Nev. at 109, 771 P.2d at 149.

Conspicuously absent from Keeney's argument is any assertion of bad faith or connivance by the State. Neither does Keeney contend that he has been prejudiced by the erasure of the tapes or that their contents were exculpatory and material to his defense. Because Keeney has failed to satisfy the test for reversal on the basis of lost evidence, we conclude that the district court correctly denied his motion to dismiss.

### Sufficiency of the Evidence to Sustain Sexual Assault Convictions.

Keeney's final contention is that the evidence presented by the State was insufficient to sustain verdicts of guilty on the sexual assault charges. We disagree.

In determining whether sufficient evidence existed to support the jury's verdict, the relevant inquiry for this court is:

> "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984), (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). It is well settled that a jury verdict will not be disturbed on appeal where there is substantial evidence to support it. *Koza,* 100 Nev. at 251, 681 P.2d at 47; Bolden v. State, 97 Nev. 71, 624 P.2d 20 (1981). Where conflicting testimony is

presented, it is within the province of the jury to determine the weight and credibility to be given to the testimony. *Bolden,* 97 Nev. at 73, 624 P.2d at 20.

Keeney was convicted of six counts of sexual assault, pursuant to NRS 200.366. The testimony of the minor victims and the health care professionals, described above, constitutes substantial evidence to support Keeney's convictions of sexual assault. The jury heard Keeney's denial and his attempt to establish that the children were sexually abused by their natural father. Faced with conflicting testimony, the jury weighed the evidence and determined that the State had met its burden. We perceive no basis for disturbing that determination.

We have also considered the issue raised by Keeney concerning prosecutorial misconduct and conclude that it is clearly without merit and need not be addressed.

## *CONCLUSION*

For the reasons discussed above, we conclude that Keeney was fairly tried and convicted. Accordingly, the judgments of conviction entered by the district court pursuant to the verdicts of the jury are affirmed.[3]

---

[3]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.