*932 Shearing, J.,
with whom Maupin, J., joins, dissenting:
I would affirm the judgments convicting Marvelle of one count of sexual assault of a child under fourteen years of age and two counts of lewdness with a child under fourteen years of age.
Determining whether to grant or deny a motion for a psychological evaluation of a child-victim lies within the sound discretion of the trial court. Keeney v. State, 109 Nev. 220, 226, 850 P.2d 311, 315 (1993). This court must not disturb the trial court’s determination unless the trial court abused its discretion. Id. The record does not support the conclusion that the district court abused its discretion in denying Marvelle’s motion. In fact, the record reveals that the district court considered each of the four Keeney factors before concluding that a psychological examination of the child-victim was unwarranted.
The district judge clearly articulated his reasons for denying Marvelle’s motion for psychological evaluation of the complaining witness. The district court found that two of the Keeney factors weighed in favor of granting Marvelle’s motion. First, the district court found that the child-victim did not require protection; second, the district court concluded that little or no evidence corroborated the child-victim’s testimony. The district court also found, however, that two Keeney factors weighed heavily against granting Marvelle’s motion. The State had not hired a psychologist or psychiatrist to examine the child-victim, and the district court concluded that no evidence suggested that the child-victim’s mental or emotional condition affected her veracity. The district court analyzed the last Keeney factor as follows:
[T]he fourth part of the test is that, whether the victim’s mental or emotional state may have affected her veracity as a witness, and that is the real crux of this case, the way I see it, in that the victim is now 15 years old, and that there’s nothing in front of me that indicates that she is incompetent or doesn’t understand, or is not able to perceive or recall or relate anything about what allegedly happened in this case.
In fact, the evidence appears to be the opposite, that she’s able to relate it.
But, of course this is a debatable point. I asked Mr. Wright [defense counsel] what would happen with a psychological evaluation, how would they, a therapist or psychiatrist, be able to determine if she’s telling the truth?
And I don’t believe that Mr. Wright could give me an answer on that, because there is really no answer. That’s why we have jury trials. But, I’ll allow you to add to that, Mr. Wright, to make sure that this argument is preserved.
*933 So, looking at the four-part test, two of the four prongs were not met, so I determined that it was inappropriate to appoint an expert in this case.
The record demonstrates that the district court considered each Keeney factor and reached an eminently sensible conclusion. I disagree with the majority’s implication that each factor must be given equal weight. The Keeney case holds that the district court’s decision must be based on the facts and circumstances surrounding each case. Thus, although the four named factors must be considered, one factor may outweigh all others in a particular case. Properly weighing the Keeney factors is best left to the trial court. The majority suggests that the State hired a mental health professional to examine the victim when in fact Capa Casale was merely a therapist who counseled the victim about her anxiety relating to the trial process. Casale was neither a psychologist or psychiatrist who examined the victim, nor a witness called by the State to testify about her mental condition. Casale testified about the behavior patterns of victims generally. Lickey v. State, 108 Nev. 191, 827 P.2d 824 (1992), is inapplicable here because the State did not conduct a psychological evaluation of the victim, and furthermore, Keeney superceded Lickey.
The majority cites Anderson v. State, 749 P.2d 369 (Alaska Ct. App. 1988), in support of its conclusion that the defense must have access to a psychological evaluation of the victim if the State proffers testimony regarding the behavior patterns of victims generally. This reliance on Anderson, however, is misplaced. In Anderson, the court required a psychological evaluation of the young children who were victims in order to determine whether, despite their age, they were competent to testify at trial. Here, the district court specifically found “there’s nothing in front of me that indicates that she is incompetent or doesn’t understand, opus not able to perceive or recall or relate anything about what allegedly happened in this case.” At the time of trial, the child-victim was fifteen years old and a junior high school student. The district court reasonably determined that the jury could propefly evaluate the victim’s state of mind when she testified.
I would hold that because Marvelle failed to object to the admission of State witness testimony at trial, and because I believe that admission of this testimony was not plainly erroneous, this court should not consider Marvelle’s argument regarding witness vouching. Despite this position, I will, however, respond to the majority discussion of the State’s witness testimony.
The majority incorrectly maintains that the State based its case on the testimony of witnesses who vouch for the reliability and truthfulness of the victim. The record contradicts the majority position and demonstrates that the State based its case on the tes *934 timony of the victim and the corroborating testimony of the victim’s mother.
The majority also mischaracterizes the testimony of Capa Casale, who counseled the victim briefly before trial. Casale testified about the stages of the grieving process. The majority deems her testimony ‘ ‘psychological jargon,’ ’ despite wide acceptance of this theory in the field of mental health. This court is in no position to allow its personal opinion of the theory to affect its ruling. Testimony regarding typical victim behavior under circumstances similar to this case certainly could have helped the jury to understand why the victim did not report the incidents earlier. Casale testified as an expert on these matters, based on the expertese she gained earning her undergraduate degree in social work, master’s degree in marriage and family therapy, and working as a social worker in crisis intervention at St. Mary’s Hospital and counseling runaway adolescents at Community and Runaway Youth Services. Casale’s testimony about stages of grief was unrelated to her work with the victim about the stress of the court process.
The decision to admit evidence lies within the sound discretion of the trial court. The trial court’s determination will not be overturned absent manifest error. Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). Furthermore, NRS 50.345 specifically authorizes admission of the type of testimony offered by Casale as an appropriate response to the arguments offered by Marvelle. NRS 50.345 provides “[i]n any prosecution for sexual assault, expert testimony is not inadmissible to show that the victim’s behavior or mental or physical condition is consistent with the behavior or condition of a victim of sexual assault.” The majority suggests that because the district court denied Marvelle’s motion for a psychological evaluation of the victim, that admission of Casale’s relatively innocuous testimony about the grieving process constitutes plain error. This suggestion is unsupported by legal authority and flies in the face of the statute and the applicable standard of review granting deference to the trial court.
The majority improperly claims that the testimony of the victim’s school counselor, the initial investigating police officer and the police detective addressed the victim’s “mental health and ‘demeanor’ ” and maintains that Marvelle had “no way to defend himself against this testimony.” No witnesses testified as to the victim’s mental health except peripherally in response to defense counsel’s questions. Defense counsel cross-examined each witness extensively in an attempt to point out inconsistencies in the victim’s various statements and to question her mental health.
Based on defense counsel’s opening statement, it is clear that the defense strategy was to encourage the various witnesses who *935 heard the victim’s testimony to repeat what the victim stated at various times in order to point out the inconsistencies. The defense counsel said in the opening statement, “You’re going to hear some real discrepancies in [the victim’s] testimony on particular facts and what happened on this occasion, and what she told someone later, and what she told someone a third time.” Defense counsel followed through in his cross-examination of the witnesses and, in attempting to attack the victim’s credibility and mental state, he elicited much of the testimony favorable to the victim, as well as her problematic behavior.
None of the State’s witnesses vouched for the victim’s credibility so as to create plain error. The victim’s school counselor testified only that the victim’s statements were “consistent.” Only when defense counsel pressed the counselor on teenage lying, did she answer, “I think if I had to pick between the two [the victim and another teenager in the same school] as a counselor, I’d pick [the victim].” Since defense counsel elicited this testimony, the defendant cannot now complain that its admission was erroneous.
The initial investigating officer did not vouch for the victim’s credibility. He indicated that he was merely preparing a “courtesy report” for another jurisdiction and that he didn’t elicit much detail. He did testify that he “knew something had transpired,” but he said it in the context of having enough information that it should be reported to the police department that had jurisdiction. He was not expressing a final judgment on her credibility.
Although the detective from Douglas County testified that he believed the victim’s story, his statement was in the context of describing the interrogation technique he uses in his capacity as a police officer to test whether a witness is in fact telling the truth. Even if admission of the statement was error, it constituted only harmless error. The jury had to know already that the police detective believed the victim since implicit in the police detective’s decision to submit the case for prosecution is his belief in the truth of the testimony of the victim. The majority states that admission of the police detective’s statement opinion disadvantaged Marvelle because “he had no opportunity to present contrary evidence of comparable weight.” Marvelle certainly took advantage of the opportunity to conduct extensive cross-examination, and he had the opportunity to bring in any witnesses providing contradictory testimony. He also testified himself. The jury made the ultimate determination of who was telling the truth.
The majority questions the victim’s credibility, citing the fact that the victim has had problems in her relationships and behavior. Unfortunately, victims of sexual abuse usually have problems in these areas by the very reason of the fact that they have been *936 sexually abused. That is why it is particularly important that the jurors see the witnesses and listen to all of the evidence, both good and bad, so that they may judge the truth. This court is in no position to make that determination or even to suggest that the jury’s determination is wrong.