*1201
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a judgment of conviction of one count each of robbery and first degree murder, and from a sentence of death. Appellant Gregory N. Leonard raises numerous claims of error, none of which warrant reversal of his conviction or sentence.
 
 [1]
 

 FACTS
 

 Appellant Gregory N. Leonard worked as maintenance supervisor at the Mark Twain Apartments in Las Vegas. He lived in a small apartment next to the maintenance shop. The victim in this case, Thomas Benjamin Williams, was a tenant in the same apartment complex. Williams and appellant, occasional drinking companions, became involved in a dispute over a $3,548.00 poker machine jackpot. On November 25, 1994, the evening before the night Williams was killed, a bartender separated the two during a loud argument over the winnings.
 

 Williams and Phyllis Fineberg, a reputed prostitute, were engaged to be married. On November 25, 1994, Fineberg borrowed Williams’ car for about one-half hour, but did not return it for several hours. When she returned, the couple argued. Fineberg left Williams’ apartment and went to the apartment of her friend Lynn Spencer in the same complex. Shortly thereafter, Williams called Spencer’s apartment, told Fineberg he was going across the street to P.T.’s Pub for a drink, and went to the pub.
 

 Ten to fifteen minutes later, Fineberg appeared at the pub but did not sit with Williams. Fineberg won a $200.00 poker jackpot and slipped the money into Williams’ shirt pocket. About one-half hour later, Fineberg left the pub and returned to Spencer’s apartment.
 

 Later that night, at around 12:15 a.m., Fineberg returned to the pub. She approached Williams, who was sitting at the bar between Frank Deschene and appellant. Williams was intoxicated, and the bartenders, Kassey Leonard and Albert Garkow, had stopped serv
 
 *1202
 
 ing him alcohol. Williams and Fineberg argued. Garkow tried to separate them because their argument was disturbing other customers. According to Garkow, Williams had pretty much broken off his relationship with Fineberg. At one point, Fineberg told Garkow to keep Williams away from her or she was “gonna kill him.” At trial, Fineberg denied saying this. Fineberg reached into Williams’ shirt pocket and retrieved the money she had placed there earlier that evening.
 

 Fineberg returned to the bank of poker machines. Appellant approached her and asked her to return the money she had taken from Williams’ pocket. Fineberg refused, and appellant sat back down next to Williams.
 

 Garkow asked Deschene and appellant to help Williams across the street to his apartment because he felt Williams was too drunk to walk alone. Fineberg was not comfortable with this arrangement and followed them to Williams’ apartment. Fineberg saw Deschene walk Williams across the street. After Williams opened the door to his apartment, Fineberg asked Deschene to leave. Deschene refused, and Fineberg called 911. Thereafter, when appellant arrived at the apartment, Fineberg again called 911. Deschene and appellant then left the area.
 

 Williams and Fineberg continued to argue for a few minutes. As Fineberg was leaving, she encountered a police officer responding to her 911 calls. At Williams’ request, the officer patted down Fineberg and confirmed that she had no key to the apartment.
 

 Fineberg spent the night at Spencer’s apartment and called Williams the next morning. When Williams did not answer, she proceeded back to his apartment. Upon arrival, she noticed that the heater was not on and that the door was unlocked. Fineberg then entered the apartment and found Williams lying on the floor, wearing the same clothes as the night before. Fineberg returned to Spencer’s apartment, dialed 911 and reported the death.
 

 The police found Williams’ body lying face up on the floor. Initially, the officers believed that Williams had died of natural causes and began processing the body and death scene as a natural death. After a mortuary attendant discovered a ligature mark around Williams’ neck, the police called homicide detectives and secured the scene.
 

 There were no initial suspects, no signs of forced entry into the apartment, and no suspicious fingerprints. There was a contusion consistent with blunt force trauma on Williams’ left scalp. The position of the contusion was indicative of a blow to the head, not a fall. A ligature had been wrapped around his neck several times.
 

 An autopsy revealed signs of death by asphyxiation, including a fractured bone in Williams’ neck. Dr. Robert Jordan, who per
 
 *1203
 
 formed the autopsy, concluded that the cause of death was asphyxia due to ligature strangulation and the manner of death was homicide. Dr. Jordan estimated that Williams was killed between 1:00 a.m. and 9:45 a.m. on November 26, 1994.
 

 A few days later, Williams’ son, Doug Williams, arrived from Texas to retrieve his father’s belongings. Appellant and Jesus Cintron, another maintenance worker at the Mark Twain Apartments, let him into Williams’ apartment and helped him move things. Doug Williams gave appellant and Cintron some of Williams’ furniture and possessions.
 

 After returning to Texas and inventorying his father’s possessions, Doug Williams noticed that some of his father’s jewelry and guns were missing. He informed the Las Vegas Metropolitan Police Department. Later, after being notified of the jackpot dispute between appellant and Williams, Detective Michael J. Bryant of the Las Vegas Metropolitan Police Department ran appellant’s name on the pawn shop data base. Detective Bryant discovered that appellant had pawned two rings, a Remington shotgun and a video camera which belonged to Williams.
 

 On December 30, 1994, Detective Bryant interviewed appellant. When asked about the night Williams died, appellant told the detective he had socialized with Williams at the pub. The last time appellant saw Williams was at Williams’ apartment door. Williams was with a woman and another man. When asked if he had received any property from Williams, appellant said that Williams’ son had given him “some stuff.” A search, pursuant to a search warrant, of appellant’s apartment on January 4, 1995, revealed several boxes of ammunition that fit Williams’ guns.
 

 According to Cintron, appellant had keys to every apartment in the complex. At trial, appellant denied having a key to Williams’ apartment, and said he had purchased the pawned rings and shotgun from strangers on the street.
 

 On January 22, 1995, appellant paged Cintron and asked Cintron to come and help him “or else ten more people [sic] going to die.”
 
 [2]
 
 Cintron called appellant’s pager. Appellant returned the call. Cintron recognized appellant’s voice, and Cintron’s caller I.D. indicated Mark Twain Apartments, where appellant used the telephone in the maintenance shop. When Cintron refused to come and help, appellant said he would kill Cintron and several other people. Appellant also told Cintron that he “did [Williams] too.”
 

 Cintron reported this conversation to the police. Cintron brought his beeper to a police station and played appellant’s message for the police officers. After listening to the message several
 
 *1204
 
 times the officers returned the beeper to Cintron without recording the message.
 

 On January 23, 1995, as a result of Cintron’s report, the police obtained another search warrant and again searched appellant’s apartment. They found pawn shop receipts in a wallet belonging to Jerry Leonard, appellant’s cousin. The receipts were for a diamond ring that had been pawned by Jerry Leonard on November 30, 1994.
 

 When Detective Bryant asked appellant about the pawned items and the ammunition found in his apartment, appellant said he had purchased the items on the street. It is known to the police that people often sold stolen goods on the street where appellant lived.
 

 The police arrested appellant. He was charged with one count each of first degree murder, robbery and burglary. The jury found appellant guilty of one count each of first degree murder and robbery.
 

 Appellant called several witnesses in the penalty phase. Lori Knight, the manager of the Mark Twain Apartments, testified that appellant was a good employee; he put a lot of effort into his work, did extra things, and always made sure “the job was done.” She also testified that she knew of appellant’s friendship with Williams and, when she informed appellant and Cintron of Williams’ death, appellant became upset.
 

 Appellant’s mother testified that appellant had spoken to her often about Williams. She said appellant was devastated that Williams was murdered because he considered Williams a “fatherly figure.” The state elicited from appellant’s fiancée that appellant has the AIDS virus.
 

 The state presented testimony at the penalty hearing by a detective concerning his investigation of another murder with which appellant was charged, in which appellant apparently kept the body of the victim under his bed for a period of time. Williams’ son and daughter gave victim impact testimony at the penalty hearing.
 

 The jury found one aggravating circumstance, that the murder was committed while the person was engaged in the commission of or attempt to commit a robbery.
 
 See
 
 NRS 200.033(4). It found as a mitigating circumstance that appellant had no significant history of prior criminal activity, and found one or more other, unspecified mitigating circumstances.
 
 See
 
 NRS 200.035(1) and (7). The jury found no mitigating circumstances sufficient to outweigh the aggravating circumstance, and returned a verdict of death.
 
 See
 
 NRS 175.554. The district court sentenced appellant to death for the murder and to serve a term of fifteen years’ imprisonment for robbery.
 

 
 *1205
 

 DISCUSSION
 

 The Guilt Phase
 

 Appellant contends that the prosecutor exercised a peremptory challenge during voir dire against an African-American for racial reasons, and that the district court erred in overruling his
 
 Batson
 
 challenge thereto.
 
 See
 
 Batson v. Kentucky, 476 U.S. 79 (1986). Appellant is African-American and, ultimately, no African-Americans served on his jury. The state presented the following race neutral reasons for striking the prospective juror: he was young (22 years old), he was inattentive, and he gave equivocal responses regarding imposition of the death penalty.
 

 Defense counsel disputed the grounds. The district court confirmed on the record the potential juror’s young age and that he was equivocal in responding to questions regarding imposition of the death penalty. The degree of his attentiveness cannot be determined from the record. The district court found the prosecutor’s stated reasons race neutral and overruled appellant’s objection to the peremptory challenge.
 

 The reasons given by the state were race neutral and sufficient to withstand a
 
 Batson
 
 challenge.
 
 See
 
 Purkett v. Elem, 514 U.S. 765, 767-68 (1995) (the reason offered to withstand a
 
 Batson
 
 objection will be deemed race neutral unless a discriminatory intent is inherent in the prosecutor’s explanation); Doyle v. State, 112 Nev. 879, 887-88, 921 P.2d 901, 908 (1996) (following
 
 Purkett).
 
 Thus, the district court could properly overrule appellant’s
 
 Batson
 
 objection.
 

 Appellant also contends that the peremptory challenge was based on the potential juror’s scruples regarding the death penalty and violated Witherspoon v. Illinois, 391 U.S. 510 (1968). Appellant further contends that the “death qualification” of the jury in general denied him the right to be tried by a jury drawn from a fair cross-section of the community. This case does not involve the practically unlimited “for cause” exclusion of death-scrupled jurors condemned in
 
 Witherspoon.
 
 Further, the “death qualification” of appellant’s jury meets constitutional standards and did not deny appellant trial by a jury drawn from a fair cross-section of the community.
 
 See
 
 Buchanon v. Kentucky, 483 U.S. 402, 416 (1987); Lockhart v. McCree, 476 U.S. 162, 173 (1986); Aesoph v. State, 102 Nev. 316, 317-19, 721 P.2d 379, 380-81 (1986); McKenna v. State, 101 Nev. 30, 38, 342-44, 705 P.2d 614, 617-18 (1985).
 

 Appellant contends that the district court improperly excused another potential juror because he had visited the Ely State Prison
 
 *1206
 
 and hesitated when questioned about imposing the death penalty.
 
 See Witherspoon,
 
 391 U.S. at 521-23. The record indicates, however, that the district court excused this potential juror for personal hardship because his college classes in Reno were about to begin.
 

 Appellant also contends that the district court erred in admitting testimony, concerning the message on Cintron’s beeper asking for help “or else ten more people [sic] going to die” because the police officers’ failure to preserve the beeper or record the message denied him exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).
 

 Appellant failed to preserve this issue for appeal by objecting below.
 
 See
 
 Hewitt v. State, 113 Nev. 387, 392, 936 P.2d 330, 333 (1997). Further, the beeper message testimony was properly admitted. “A conviction may be reversed when the State loses evidence if (1) the defendant is prejudiced by the loss or, (2) the evidence was ‘lost’ in bad faith by the government.” Sparks v. State, 104 Nev. 316, 319, 759 P.2d 180, 182 (1988);
 
 see also
 
 Sanborn v. State, 107 Nev. 399, 407-08, 812 P.2d 1279, 1285-86 (1991). Appellant has not shown that he was prejudiced by the lost evidence, i.e., that the beeper message was exculpatory.
 
 See
 
 Rippo v. State, 113 Nev. 1239, 1257, 946 P.2d 1017, 1029 (1997) (inculpatory admission does not fall under
 
 Brady), cert. denied,
 
 _ U.S. _, 119 S.Ct. 104 (1998). Moreover, there is no indication of bad faith on the part of the police. Appellant’s rights under
 
 Brady
 
 were not violated.
 
 See Brady,
 
 373 U.S. at 87 (prosecution may not deliberately suppress evidence favorable to an accused).
 

 Appellant contends that the district court abused its discretion in refusing to admit evidence of prior bad acts by a prosecution witness. Specifically, appellant wanted to present evidence that Fineberg, Williams’ fiancée, was late in meeting Williams on the night he was killed because she had engaged in an act of prostitution during that time. Appellant contends that this testimony was admissible because it was germane to issues other than Fineberg’s character. Specifically, he contends that it was admissible under NRS 48.045(2) to show that the engagement was irrevocably ended, and thus that Fineberg had a motive to kill Williams.
 
 See
 
 Lay v. State, 110 Nev. 1189, 1195, 886 P.2d 448, 452 (1984). Further, appellant contends that it was admissible under the “complete story of the crime” doctrine.
 
 See
 
 Shults v. State, 96 Nev. 742, 748, 616 P.2d 388, 392 (1980) (relevant and necessary evidence may be presented to show “a full and accurate account” of the circumstances surrounding the crime).
 

 
 *1207
 
 The district court conducted a
 
 Petrocelli
 
 hearing and determined to exclude this evidence.
 
 See
 
 Petrocelli v. State, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985). Appellant failed to show that this evidence was relevant for a proper purpose or that its probative value was not substantially outweighed by its unfair prejudicial effect.
 
 See
 
 Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064 (1997). Thus, appellant has not shown that the district court improperly excluded this evidence. Rulings on admissibility of evidence are left to the sound discretion of the district court, and will not be disturbed on appeal where, as here, there is no showing of manifest error. Keeney v. State, 109 Nev. 220, 228, 850 P.2d 311, 316 (1993) (citing
 
 Petrocelli,
 
 101 Nev. at 52, 850 P.2d at 508).
 

 Appellant contends that contacts by Fineberg with four jurors during his trial denied him a fair trial, and that the district court improperly denied his motion for a mistrial based on the juror contacts. Fineberg approached a juror in the smoking area of the courthouse and told him she was the next witness. Later, she approached the same juror and wished him a nice day. After testifying, Fineberg approached another juror and said “that was really hard for me to relive.” Fineberg approached a third juror, looked him in the eye, and said “some people just get away with murder.” Fineberg also attempted to initiate a conversation with a fourth juror, who did not understand what she said. Each of these jurors reported this conduct. Appellant further asserts that additional jurors may have heard and been affected by Fineberg’s contacts with these jurors.
 

 The district court replaced with alternates the juror to whom Fineberg had said “some people just get away with murder” and the juror to whom she had said “that was really hard for me to relive.” The district court determined that Fineberg’s contacts with the juror to whom she had said “have a nice day” and the juror to whom she had mumbled something unintelligible were not significant and had not prejudiced appellant’s right to a fair trial. The district court determined that any prejudice to appellant had been cured by replacement of the two jurors who had experienced the most egregious contacts.
 

 We have held that “[n]ot every incidence of contact between jurors and witnesses requires the granting of a motion for a new trial.” Roever v. State, 111 Nev. 1052, 1055, 901 P.2d 145, 146 (1995) (citing Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 722 (1979)). “[A] new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted. The trial court determines whether the litigant has been prejudiced, and its judgment will not be overturned unless abuse of discretion
 
 *1208
 
 is manifest.”
 
 Id.
 
 (citations omitted). The district court found that appellant was not prejudiced by Fineberg’s contacts with the two jurors who were not replaced, and appellant has not shown that it erred in doing so. Thus, the district court did not abuse its discretion in denying appellant’s motion for a mistrial.
 
 See
 
 Reese v. State, 95 Nev. 419, 424, 596 P.2d 212, 216 (1979) (when jurors and witness conversed on subject unrelated to matter before the jury, court did not abuse its discretion by refusing to dismiss the jury and declare a mistrial).
 

 Appellant’s assertion that other jurors, in addition to the four mentioned above, may have been privy to and affected by Fineberg’s juror contacts is not substantiated in the record. Further, appellant failed to raise this question in the district court, so it is beyond the purview of this appeal.
 
 See Hewitt,
 
 113 Nev. at 392, 936 P.2d at 333.
 

 Appellant contends that he was denied a fair trial by several of the jury instructions given by the district court. Specifically, appellant contends that the instruction defining malice aforethought is unconstitutionally archaic and ambiguous because it refers to “a heart fatally bent on mischief” and actions done “in contradistinction to accident or mischance.” Although these phrases are not common in today’s general parlance, we conclude that their use did not deprive appellant of a fair trial.
 
 See
 
 Guy v. State, 108 Nev. 770, 776-77, 839 P.2d 578, 582-83 (1992).
 

 Appellant contends that the district court improperly instructed the jury that the premeditation element of first degree murder “may be instantaneous as successive thoughts of the mind.” This instruction is a correct statement of the law. Scott v. State, 92 Nev. 552, 555, 554 P.2d 735, 737 (1976).
 

 Appellant contends that the district court improperly refused to instruct the jury that the crime of robbery requires the intent to take property from a living person. The district court adequately instructed the jury on the crime of robbery; it was not required to give such an instruction in this case.
 
 [3]
 

 See
 
 NRS 200.380;
 
 see generally
 
 Norman v. Sheriff, 92 Nev. 695, 697-98, 558 P.2d 541, 542-43 (1976); Sheriff v. Jefferson, 98 Nev. 392, 649 P.2d 1365 (1982).
 

 Appellant contends that the instruction on the felony murder rule failed to inform the jury that the homicide must occur in the
 
 *1209
 
 course of the commission of a felony, and not vice versa, for the rule to apply. The instruction given by the district court correctly states the felony murder rule.
 
 See
 
 Payne v. State, 81 Nev. 503, 406 P.2d 922 (1965).
 

 Appellant contends that the district court denied him the presumption of innocence by instructing the jury to do “equal and exact justice between the Defendant and the State of Nevada.” This instruction does not concern the presumption of innocence or burden of proof. A separate instruction informed the jury that the defendant is presumed innocent until the contrary is proven and that the state has the burden of proving beyond a reasonable doubt every material element of the crime and that the defendant is the person who committed the offense. Appellant was not denied the presumption of innocence.
 

 Appellant contends that the reasonable doubt instruction required a higher degree of doubt for acquittal than mandated by constitutional standards. This contention lacks merit. The district court gave Nevada’s statutory reasonable doubt instruction as recited in NRS 175.211(1). This instruction is mandated by NRS 175.211(2), and this court has concluded that it is not a denial of the process where, as here, the jury was also instructed on the presumption of innocence and the state’s burden of proof. Bollinger v. State, 111 Nev. 1110, 1115, 901 P.2d 671, 674 (1995);
 
 see also
 
 Lord v. State, 107 Nev. 28, 38-40, 806 P.2d 548, 554-56 (1991). Further, the United States Court of Appeals for the Ninth Circuit has held that this instruction, while not ideal, does not violate constitutional standards. Ramirez v. Hatcher, 136 F.3d 1209, 1211 (9th Cir.),
 
 cert.
 
 denied, _U.S. _, 119 S.Ct. 415 (1998).
 

 Appellant contends that the district court improperly instructed the jury that it was not required to reach unanimity on the means or the theory of criminal liability used in arriving at its verdict. The district court properly gave this instruction.
 
 See
 
 Evans v. State, 113 Nev. 885, 944 P.2d 253 (1997).
 

 Appellant contends that his convictions of robbery and first degree murder are not supported by sufficient evidence. “The standard of review for sufficiency of the evidence upon appeal is whether the jury, acting reasonably, could have been convinced of the defendant’s guilt beyond a reasonable doubt.” Kazalyn v. State, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992). There is sufficient evidence if the evidence, viewed in the light most favorable to the prosecution, would allow any rational trier of fact to find
 
 *1210
 
 the essential elements of the crime beyond a reasonable doubt. Davis v. State, 110 Nev. 1107, 1116, 881 P.2d 657, 663 (1994) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 

 Appellant contends that his conviction of robbery is not supported by sufficient evidence because the state did not prove that he formed the intent to rob Williams prior to killing him. Specifically, appellant points to Cintron’s testimony that appellant said he and Williams got into an argument and then a fight, that appellant strangled Williams after Williams threatened to shoot him, and that later, appellant and his cousin returned to Williams’ apartment and “robbed him for his stuff.”
 

 We have previously held that “although the acts of violence and intimidation preceded the actual taking of the property and may have been primarily intended for another purpose, it is enough, to support [the robbery charges], that [defendants], taking advantage of the terrifying situation they created, fled with [the victim’s] property.”
 
 Norman,
 
 92 Nev. at 697, 558 P.2d at 543. Under
 
 Norman,
 
 ample evidence was presented to convict appellant of robbery. Appellant killed Williams, left Williams’ apartment, and later returned to take Williams’ property. Appellant, shortly after Williams died, pawned a shotgun and two rings that belonged to Williams. Further, ammunition for a .22 caliber rifle, a .45 caliber handgun and a 12 gauge shotgun was found in appellant’s apartment. Missing from Williams’ belongings were a .22 caliber rifle, a .45 caliber Colt semi-automatic handgun and a Remington 12 gauge shotgun. Also, appellant and Williams had been involved in a dispute over a gambling jackpot and had argued on the evening of Williams’ death so vehemently that a bartender separated them. Sufficient evidence was presented for the jury to reasonably infer that appellant killed Williams to obtain his possessions.
 
 See id.; see also
 
 NRS 200.380.
 

 Appellant contends that the state did not present sufficient evidence to satisfy the intent element of first degree murder. Specifically, appellant contends that Cintron’s testimony regarding appellant’s confession is evidence of only voluntary manslaughter. Further, as mentioned previously, appellant contends that there was insufficient evidence of robbery and therefore of first degree murder under the felony murder rule.
 

 The deliberation needed for first degree murder need only be for an instant.
 
 Scott,
 
 92 Nev. at 555, 554 P.2d at 737. A medical expert testified that it took Williams between thirty seconds and one and one-half minutes to die from the ligature strangulation.
 
 *1211
 
 The ligature had been wrapped around Williams’ neck several times. The jury could reasonably infer from the evidence presented that the killing was willful, deliberate, and premeditated, and therefore first degree murder.
 
 See
 
 NRS 200.030(l)(a). Further, as discussed above, sufficient evidence was presented to support appellant’s conviction of robbery and to implicate the felony murder rule.
 

 Appellant contends that he was denied a fair trial due to judicial misconduct. Specifically, appellant complains that the district court’s disparagement of the jury questionnaire prejudiced the defense. At one point, the court said, “I won’t use these questionnaires again,” and told a juror to “forget the questionnaire.” Appellant contends that the district court improperly denied his motion to dismiss the jury panel based on these remarks. The jurors did not know that the defense had requested the questionnaire; it was not tied to the defense in the jury’s knowledge. Thus, appellant was not prejudiced by the court’s comments, and dismissal of the jury was not warranted.
 

 Appellant further contends that he was denied a fair trial by the district court’s admonishment to defense counsel, during voir dire, to stop wishing individual jurors a good morning and, to save time, to greet the jury
 
 en masse
 
 instead. While the court may have displayed some irritation with defense counsel, the clear intent of its remarks was to save time; it was not directing animus toward defense counsel. This remark did not deny appellant a fair trial.
 

 Appellant complains that he was denied a fair trial because the court called lead defense counsel a “trickster.” This occurred after that attorney had received permission to leave the courtroom intermittently due to an intestinal disorder, and subsequently moved for a mistrial because both defense counsel were not present at all times. The court denied the motion, but offered to recall the witness who testified during the defense counsel’s absence. Counsel declined to recall the witness. The court’s remark was made outside the presence of the jury; appellant was not prejudiced.
 

 Appellant contends he was denied a fair trial by prosecutorial misconduct when the prosecutor asked appellant: “What did it feel like to strangle Tom Williams to death?” The court sustained defense counsel’s objection, and appellant did not answer.
 

 Appellant contends that this question was inflammatory and prejudicial misconduct and denied him a fair trial. The state
 
 *1212
 
 argues that it was an appropriate follow-up question after appellant testified about the last time he saw Williams alive. The state cites to Johnson v. United States, 318 U.S. 189, 195 (1943) (an accused who takes the stand may not stop short in his testimony by omitting and failing to explain circumstances and events already in evidence, in which he participated and concerning which he is fully informed).
 

 The prosecutor’s “question” was improper; it was inflammatory and not a true attempt to elicit relevant information. Nevertheless, the district court sustained appellant’s objection, and appellant did not answer the question. Appellant was not materially prejudiced nor denied a fair trial by this question.
 

 Appellant also complains of the prosecutor’s arguments concerning facts not in evidence. Specifically, the prosecutor sarcastically commented that according to the defendants in any criminal trial in which she had represented the state in the last eighteen years, the police and the prosecution never got the right guy. Further, the prosecutor accused defense counsel of arguing that the victim had a bad heart and was going to die anyway. These were not, as the state claims, appropriate rebuttals to defense arguments.
 
 See
 
 Williams v. State, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987) (prosecutor may not argue facts or inferences not supported by the evidence). Nevertheless, this misconduct was not so egregious that it rendered appellant’s conviction or sentence a denial of due process.
 
 See
 
 Castillo v. State, 114 Nev. 271, 281, 956 P.2d 103, 109-110 (1998).
 

 Appellant complains that the prosecutor personally attacked his attorney, infringing on his right to counsel, by telling the jury that defense counsel was trying to “sell [them] a bill of goods.”
 
 See
 
 McGuire v. State, 100 Nev. 153, 157, 677 P.2d 1060, 1063-64 (1984). Further, appellant argues that the prosecutor denied him a fair trial by personally vouching for the untruthfulness of appellant’s testimony.
 
 See
 
 United States v. Young, 470 U.S. 1, 8 (1985); Ross v. State, 106 Nev. 924, 927, 803 P.2d 1104, 1105 (1990). Appellant contends that the prosecutor’s telling the jury that appellant had fooled people and warning “don’t let him fool you” were an impermissible appeal to passion and prejudice.
 
 See
 
 Viereck v. United States, 318 U.S. 236, 247-48 (1943); United States v. Garza, 608 F.2d 659, 663-64 (5th Cir. 1979).
 

 These comments were not, as the state contends, permissible rebuttal argument.
 
 Cf.
 
 Williams v. State, 113 Nev. 1008, 1018-19, 945 P.2d 438, 444-45 (1997),
 
 cert.
 
 denied, _ U.S _, 119
 
 *1213
 
 S.Ct. 82 (1998). The ultimate question is whether the misconduct was so egregious that it denied the fundamental right to a fair jury trial.
 
 Id.
 
 Overall, the misconduct was not so egregious that it denied appellant a fair trial.
 

 Appellant contends that Cintron’s testimony that appellant said he “did” Williams “too” was improperly admitted as evidence of other crimes, and that the district court improperly denied his subsequent motion for a mistrial.
 
 See
 
 NRS 48.045(2) (evidence of other crimes is not admissible “to prove the character of a person in order to show that he acted in conformity therewith”). Further, even though appellant did not request a curative instruction following this testimony, he contends that the district court erred by failing to
 
 sua sponte
 
 give such an instruction, citing Sterling v. State, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). These contentions lack merit.
 
 See
 
 Stickney v. State, 93 Nev. 285, 564 P.2d 604 (1977) (defendant’s election not to have the jury admonished vitiates any objection the defendant may have had regarding the reference). The remark was unintentional and did not materially prejudice appellant. The district court did not abuse its discretion in denying appellant’s motion for a mistrial.
 
 See
 
 Evans v. State, 112 Nev. 1172, 1200, 926 P.2d 265, 283 (1996) (denial of motion for a mistrial will not be disturbed absent a clear showing of abuse of discretion),
 
 cert. denied,
 
 520 U.S. 1245, 117 S.Ct. 1854 (1997).
 

 The Penalty Phase
 

 Appellant contends the district court erred in instructing the jury, in the penalty phase, that its verdict may not be influenced by sympathy. Appellant contends that this instruction improperly precluded the jury from considering sympathy warranted by the evidence. This contention lacks merit. The district court may properly instruct the jury to disregard sympathy where, as here, the jury is also instructed to consider mitigating circumstances. Wesley v. State, 112 Nev. 503, 519, 916 P.2d 793, 803-04 (1996),
 
 cert. denied,
 
 520 U.S. 1126, 117 S.Ct. 1268 (1997).
 

 Appellant contends that the jury could not properly find robbery an aggravating circumstance because, as he claimed previously, his conviction of robbery is not supported by sufficient evidence. We have already concluded that appellant’s conviction of robbery is supported by sufficient evidence. Consequently, the jury could properly find robbery an aggravating circumstance.
 

 Appellant contends that the district court erred by admitting at the penalty phase testimony by a police detective regarding his investigation of appellant’s commission of another murder of
 
 *1214
 
 which appellant had not been convicted. Appellant contends that absent a conviction, the detective’s testimony was unreliable. Further, appellant contends that it was improper and hearsay to allow the detective to summarize investigation results, including statements of witnesses, rather than present the actual witnesses.
 

 Testimony by police officers regarding their investigations of a defendant’s other crimes is admissible at a capital penalty hearing so long as the evidence is not “impalpable or highly suspect.” Homick v. State, 108 Nev. 127, 138, 825 P.2d 600, 607 (1992). Admission of such evidence is left to the sound discretion of the district court.
 
 Id.
 
 Appellant asks this court to revisit its holding in
 
 Homick
 
 and hold such evidence inadmissible at capital penalty hearings. This we decline to do.
 

 Appellant further attempts to distinguish this case from
 
 Homick
 
 on the basis that appellant had not been convicted of a crime in the matter regarding which the detective testified in this case. Appellant has not shown, however, that the detective’s testimony was “impalpable or highly suspect” or otherwise inadmissible.
 
 See id.
 
 Hearsay evidence is generally admissible at a capital penalty hearing.
 
 See
 
 NRS 175.552(3) (evidence admitted concerning “any other matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible”). The district court did not abuse its discretion in admitting this testimony.
 

 Appellant contends that it was improper to allow victim impact testimony at the penalty hearing because the statutory aggravating factors, NRS 200.033, do not provide for presentation of such evidence. Presentation of victim impact testimony is permitted under NRS 175.552(3).
 
 See also Homick,
 
 108 Nev. at 136-37, 825 P.2d at 607. Further, victim impact testimony is permitted at capital penalty proceedings under federal due process standards. Payne v. Tennessee, 501 U.S. 808 (1991). Such evidence must be excluded if it renders the proceeding fundamentally unfair.
 
 Cf.
 
 McNelton v. State, 111 Nev. 900, 906, 900 P.2d 934, 938 (1995),
 
 cert. denied,
 
 517 U.S. 1212 (1996). That did not occur here.
 

 Appellant further contends that the testimony of Jessica Gonzales, Williams’ daughter, exceeded the proper bounds of victim impact testimony because she testified regarding the impact of the crime on herself and on other family members, including her sister and Williams’ grandchildren. Appellant did not preserve
 
 *1215
 
 this issue by objecting to admission of this testimony. Thus it is considered on appeal only if it is plain or patently prejudicial error.
 
 See Hewitt,
 
 113 Nev. at 392, 936 P.2d at 333. Admission of this testimony was not error at all. As mentioned above, such testimony may be admitted at a penalty proceeding so long as it is not impalpable or highly suspect.
 
 Homick,
 
 108 Nev. at 138, 825 P.2d at 607;
 
 see also
 
 NRS 175.552(3). Gonzales’s testimony was properly admitted and considered.
 

 [Headnote 30]
 

 Appellant contends that the prosecutor committed prejudicial misconduct by asking the jurors to place themselves in the position of the victim. The prosecutor told the jury “an eye for an eye is never really an eye for an eye when you are the victim or you are the survivor of the victim.” This type of argument is clearly improper.
 
 See
 
 Howard v. State, 106 Nev. 713, 718-19, 800 P.2d 175, 178 (1990); Jacobs v. State, 101 Nev. 356, 359, 705 P.2d 130, 132 (1985). Defense counsel’s objection terminated this line of argument at its inception, so that appellant was not unfairly prejudiced. This argument did not deny appellant a fair penalty hearing.
 
 See Castillo,
 
 114 Nev. at 281, 956 P.2d at 109-10 (inappropriate comment by prosecutor warrants reversal only if it so infects the proceeding with unfairness as to make the result a denial of due process).
 

 Appellant contends, without making any specific argument, that his sentence of death is inappropriate, citing this court’s statement that “[t]he United States Supreme Court has observed ‘that under contemporary standards of decency death is viewed as an inappropriate punishment for a substantial portion of convicted first-degree murderers.’” Chambers v. State, 113 Nev. 974, 985, 944 P.2d 805, 812 (1997) (quoting Haynes v. State, 103 Nev. 309, 319-20, 739 P.2d 497, 504 (1987), and Woodson v. North Carolina, 428 U.S. 280, 296 (1976)). Appellant notes that the ultimate penalty is reserved for the ‘ ‘worst of the worst,’ ’ and contends that he is not one of those and does not deserve the death penalty.
 
 See id.
 
 The fact that some other murderers may be worse than appellant is not a basis for reversing appellant’s sentence. As noted below, we conclude that appellant’s sentence is not excessive.
 

 Appellant points out that the jury found only one aggravating circumstance, robbery. Further, the jury found one listed statutory mitigating circumstance, no significant history of prior criminal activity, and found at least one other unspecified mitigating circumstance.
 
 See
 
 NRS 200.035(7) (“any other mitigating circumstance”). Appellant contends that the evidence supports the fol
 
 *1216
 
 lowing unspecified mitigating circumstances: (1) prior military service; (2) no problems while incarcerated awaiting trial; (3) ability to function in a structured environment; (4) steady employment history; (5) alcohol abuse; and (6) intoxication at the time of the offense. Thus, appellant contends that because the jury found at least two, and likely more, mitigating circumstances, and only a single aggravating circumstance, his sentence of death must have been imposed under the influence of passion, prejudice, and arbitrary factors, and is excessive considering the crime and the defendant.
 

 The weighing of the aggravating and mitigating circumstances is not mathematical; it is enough that the jury find one aggravating circumstance and that whatever mitigating circumstances it finds do not outweigh the aggravating circumstance or circumstances. NRS 175.554(3). That is what the jury did here. Appellant’s sentence was not imposed due to passion, prejudice or any arbitrary factor and is not excessive considering appellant and his crime.
 
 See generally
 
 Greene v. State, 113 Nev. 157, 174, 931 P.2d 54, 65 (1997).
 

 Appellant contends that the cumulative effect of the previously discussed errors denied him a fair trial.
 
 See Aesoph,
 
 102 Nev. at 322-23, 721 P.2d at 383-84 (cumulative effect of prosecutor’s injection of personal beliefs during closing argument and comments on post-arrest silence mandated reversal of first degree murder conviction); Big Pond v. State, 101 Nev. 1, 692 P.2d 1288 (1985) (because evidence was not overwhelming, cumulative effect of errors which were not egregious standing alone warranted reversal of sexual assault conviction).
 

 Relevant factors to consider in evaluating a claim of cumulative error include whether “ ‘the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged.’” Homick v. State, 112 Nev. 304, 316, 913 P.2d 1280, 1289 (1996) (quoting
 
 Big Pond,
 
 101 Nev. at 3, 692 P.2d at 1289),
 
 cert. denied,
 
 519 U.S. 1012, 117 S.Ct. 519 (1996);
 
 see also Lay,
 
 110 Nev. at 1199, 886 P.2d at 454. As discussed above, appellant’s claims of error largely lack merit. The prosecutorial misconduct that occurred was not particularly egregious, nor were there other materially prejudicial errors, and sufficient evidence supports the jury’s finding of guilt and its penalty determination. Appellant stands convicted of a serious crime, but his conviction and sentence are not in question due to cumulative or other error.
 
 See Homick,
 
 112 Nev. at 316-17, 913 P.2d at 1289;
 
 Lay,
 
 110 Nev. at 1199, 886 P.2d at 454.
 

 
 *1217
 
 In cases where the death penalty is imposed, this court, under NRS 177.055(2), considers, in addition to errors enumerated on appeal: (1) whether the evidence supports the finding of the aggravating circumstance or circumstances; (2) whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor; and (3) whether the sentence of death is excessive, considering both the crime and the defendant.
 

 We conclude, as mentioned previously, that the evidence in the record supports the jury’s finding of the aggravating circumstance of robbery. Further, we conclude that the death penalty was not, in this case, imposed under the influence of passion, prejudice, or any arbitrary factor, nor is it excessive considering the crime and the defendant.
 

 CONCLUSION
 

 Appellant has not shown that relief is warranted on any of the claims of error raised in this appeal. Further, we conclude that appellant received a fair trial and a fair penalty proceeding. Accordingly, we affirm appellant’s judgment of conviction and sentence of death.
 

 [1]
 

 On October 22, 1998, this court granted the state’s unopposed motion to cause the clerk of the district court to supplement the record on appeal with a copy of a forensic psychological evaluation. The clerk of the district court has informed this court by letter that the document in issue was never admitted as an exhibit in the proceedings below. Nonetheless, this court has been-fully informed regarding this evaluation and we conclude that the document’s formal inclusion in the record is unnecessary.
 

 [2]
 

 Apparently, appellant wanted Cintron’s help in disposing of the body of another murder victim.
 

 [3]
 

 As we discuss below, sufficient evidence was presented from which the jury could find that appellant did in fact intend to commit robbery when he killed the victim.